**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09 CR 830-4 |
| ) | Judge Harry D. Leinenweber |
| ILYAS KASHMIRI, *et al.,* ) | |
| (TAHAWWUR HUSSAIN RANA), ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO**
**MOTION FOR REVOCATION OF MAGISTRATE'S DETENTION ORDER**

Defendant, **TAHAWWUR HUSSAIN RANA**, by and through his attorney, **PATRICK W. BLEGEN**, respectfully submits the following reply to the government's motion for revocation of magistrate's detention order.

**I.     The  Bail Reform Act Supports Pretrial Release**

The government argues that the statutory factors found in 18 U.S.C. §3142(g) strongly support pretrial detention of Defendant.  However, as made clear in Defendant's prior filings in this matter, Defendant poses no risk of flight, nor is he a danger to the community.[1]  Pretrial detention is intended to be the exception rather than the norm.  *United States v. Orta*, 760 F.2d 889, 890 (8th Cir. 1985) (en banc)*. See also*;  *United States v. Chen*, 820 F.Supp. 1205 (N.D.Cal. 1992); *United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1991); *United States v. Montamedi*, 767 F.2d 1403 (9th Cir. 1985); *United States v. Hammond*, 204 F.Supp.2d 1157 (E.D.Wisc. 2002).

Nevertheless, Judge Nolan ordered Defendant detained prior to trial as he posed a risk of flight.  This determination was based on an incorrect interpretation and application of the

---

[1]Defendant incorporates his arguments from prior filings.  *See*; 09 CR 849, R. 16, 20 and 38.

§3142(g) factors and, therefore, her detention order must be vacated and Defendant ordered

released pending trial subject to any measures this Court deems necessary.

### A.    The Presumption Against Release

While Judge Nolan was correct in ruling that the presumption in favor of detention

applies to Defendant, as he was charged with a violation of 18 U.S.C. 2339A[2], that presumption

may also be rebutted by a showing that a condition or combination of conditions will

"reasonably assure" the defendant's appearance as required, and the safety of the community.

This is merely a burden of production, and it is not a heavy one.  *United States v. Dominguez*,

783 F.2d 702, 706-07 (7th Cir. 1986).  This presumption was properly rebutted by Defendant's

presentation of testimony at his detention hearing.

Defendant called three witnesses to establish Defendant's character as a non-violent and

honest person.  The first witness called, Dr. Mohammad Arshad Mirza, testified that Defendant

was a member of the Iqbal society.  The Iqbal society celebrates the works of Muhammad Iqbal,

the poet philosopher of Pakistan, who advocated for education and organization in order to affect

change in Pakistan through non-violent, legal, means.  The second witness called, Raja Yaqub,

testified as to Defendant's reputation in the Devon Avenue business community.  Yaqub testified

that Defendant is known as trustworthy and honest person by fellow business owners in the

neighborhood.  Lastly, Defendant called his brother in law, Athar Akhtar, who testified that, in

the course of knowing Defendant for the past twenty years, Defendant has shown no violent

tendencies and instead routinely condemns the violence that occurs in the Muslim world.

---

[2]At the time of Defendant's detention hearing, he was charged by criminal complaint with conspiracy to provide material support to terrorists an with providing material support to terrorists.  Defendant is now charged with conspiracy to provide material support to terrorism in India, conspiracy to provide material support to terrorism in Denmark, and providing material support to Laskar e Tayyiba, a designated foreign terrorist organization.

2

While Judge Nolan made no explicit finding as to whether the presumption was rebutted, it is clear that Defendant met his burden of production.  Although the presumption is still considered as a factor under §3142(g), even if rebutted, the presumption should not automatically militate in favor of detention.  Such a presumption operates as a generalization that people accused of certain types of crimes often also have characteristics that would make them a flight risk or danger to the community.  However, given the evidence presented to the court, it is clear that Defendant would appear as required in court and that he would pose no danger to the community.

### B.    The Weight of the Evidence

In Judge Nolan's ruling on Defendant's detention, she noted that it was not a fair reading of the evidence to suggest that Defendant was duped by David Headley.  The government uses this to argue that the weight of the evidence supports detention.  However, the government was only able to provide preliminary transcripts of any conversation used in their bond memorandums prior to the detention hearing.  These transcripts were riddled with unintelligible portions, and otherwise contained only snippets of conversation.  Nevertheless, the government crafted a theory that Defendant knew about the attacks in Mumbai before they occurred and had congratulated the attackers on a job well done.  This reading of the evidence rests on a parsing of comments made by Defendant.  Such a tortured reading of the evidence should clearly not weigh in favor of detention, when a cursory examination of the evidence illustrates that the evidence is not nearly as strong as the government suggests.

### C.      The Nature of the Charges

The government references Judge Nolan's finding that Defendant faced a "significant period of incarceration if convicted, which could give him a motive to flee." (Tr. 17-8).  At the time of Defendant's detention hearing, he was facing a maximum term of 30 years imprisonment if convicted.  Under the superseding indictment, Defendant now faces a maximum term of life imprisonment if convicted.  It is the government's position that the incentive to flee is heightened by the new maximum term.  However, any increased incentive for Defendant to flee from a term of life as opposed to a term of 30 years is negligible.  Defendant is 49 years old and a sentence of 30 years is tantamount to life imprisonment. Moreover, Defendant would be forced to abandon his family, forfeit the property of his friends and family, and live the rest of his life as an international fugitive.  This option is surely no more attractive given the increase in his maximum sentence from a term of 30 years imprisonment to a term of life.

### D.      The History and Characteristics of the Defendant

Judge Nolan relied on Defendant's "extensive international contacts," and the fact that he could receive financial and other assistance from these contacts were he to flee, in order to find that he posed a flight-risk.  The government also notes that Judge Nolan suggested that Defendant, as a result of his immigration experience, has the means "means and know-how" to flee.  However, such a suggestion ignores the clear difference between experience assisting foreign nationals in legally emigrating to the United States and running from a federal indictment.  Defendant's immigration business revolves around immigration forms and dealings with foreign consulate, not clandestine travel and document forgery.  It is unclear how Defendant's knowledge of the requirements for legally entering the United States would aid him

4

in an international manhunt.

Furthermore, the government's response does nothing more than suggest that Judge Nolan properly considered the history and characteristics of Defendant and came to the proper conclusion.  As set out in full detail in Defendant's initial motion for revocation of magistrate's detention order, Judge Nolan's opinion was based on a flawed interpretation of the facts of the case and a misunderstanding of Defendant's business knowledge and financial means.  The government does not address this and chooses instead to invoke *al Qaeda* as well as make the suggestion, without evidentiary support, that Defendant would be able flee with the support of international terrorists.  Such baseless accusations should not cause this court to affirm Judge Nolan's detention order.

## II.    Conclusion

There is no indication that Defendant would not appear in Court, nor is there any indication that he would be a danger to the community.  The government's response does little to support either claim.  The government's response also ignores the various measures proposed by Defendant in order to secure his appearance in court, namely, the posting of property valued at nearly $1 million, along with home detention with electronic monitoring.  Defendant respectfully requests, therefore, that this Court revoke the Magistrate Judge's detention order, and order him released pending trial subject to any conditions deemed appropriate.

Respectfully submitted,


 s/Patrick W. Blegen

**PATRICK W. BLEGEN**, Attorney for
Defendant, Tahawwur Rana.


**BLEGEN & GARVEY**
53 West Jackson Boulevard, Suite 1437
Chicago, Illinois 60604
(312) 957-0100

6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that foregoing Defendant's Reply to the Government's Response to Motion for Revocation of Magistrate's Detention Order was served on January 20, 2010, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.


  s/ Patrick W. Blegen
**PATRICK W. BLEGEN**
**BLEGEN & GARVEY**
53 West Jackson Boulevard, Suite 1437
Chicago, Illinois 60604
(312) 957-0100