**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 CR 830-4 |
| | ) | Judge Harry D. Leinenweber |
| ILYAS KASHMIRI, *et al.,* | ) | |
| (TAHAWWUR HUSSAIN RANA), | ) | **UNDER SEAL** |
| | ) | |

**DEFENDANT RANA'S UNDER SEAL MOTION TO SUPPRESS
POST-ARREST STATEMENT AND REQUEST FOR EVIDENTIARY HEARING[1]**

Defendant, **TAHAWWUR RANA**, by and through his attorneys, **PATRICK W.
BLEGEN**, **CHARLES D. SWIFT**, **JODI L. GARVEY**, and **DANIEL A. RUFO**, pursuant to
the Due Process and Self-Incrimination clauses of the Fifth Amendment to the Constitution of
the United States, the principles enunciated by the Supreme Court in *Miranda v. Arizona*, 384
U.S. 436 (1966), *Edwards v. Arizona*, 451 U.S. 477 (1981) and their progeny, respectfully moves
this Court for an order suppressing as evidence in this, and any other, criminal proceeding,
certain statements purportedly made by Defendant Rana on October 18, 2009.

In support of this Motion, Defendant, through counsel, shows to the Court the following:

1.      As the Court is aware, Rana is charged in three counts of a twelve count
superseding indictment which alleges, in summary, activities related to an infamous attack in
Mumbai in November of 2008, and a plot to blow up a newspaper building in Denmark.  The
three counts naming Rana allege: (1) conspiracy to provide material support to terrorism in India
(Count Nine); (2) conspiracy to provide material support to terrorism in Denmark (Count

---

[1]This motion is filed under seal as it discusses discovery marked sensitive by the government.

Eleven); and (3) providing material support to a designated terrorist organization (Count Twelve).

2.      As part of the discovery tendered to counsel, the government has provided a video/audio recording of a post-arrest statement made by Rana to two FBI agents on October 18, 2009.[2]  The interrogation appears to be conducted in an FBI interview room and, according to the video time-stamp, begins at approximately 8:48 am.

3.      Shortly after the taping begins, one of the FBI agents reads *Miranda* warnings to Rana and Rana indicates that he agrees to speak with the agents.  Rana also appears to sign a *Miranda* waiver form.  Rana is then interrogated for approximately three and a half hours.

4.      At 12:10 pm. Rana asks if he can use the washroom, and one of the agents leaves the room, apparently to make arrangements to comply with Rana's request.  Rana then asks the remaining agent whether he is being charged with something.  The agent responds by telling Rana that he was placed under arrest today.

5.      At approximately 12:12 pm, the following colloquy begins between one of the FBI agents (referred to herein as Agent 1) while the other FBI agent (Agent 2) is out of the room and continues after Agent 2 returns:

Rana:        So, the, I mean, generally I'm not aware of the criminal part.  When you say that you are arrested, generally don't they give you a charge sheet, that they are charging you with so much?  Or can they have somebody under suspicion and take that person in?

Agent 1:     Yes, I think that a judge would advise you of everything that you are being charged with.

---

[2]Counsel believe that the Court was provided a copy of the video taped statement by the government, along with other discovery materials, for purposes of the Court's review of the magistrate's detention order in this case.  If the Court does not have a copy of the video, counsel can provide one.

Rana:          Ok. . . So then if I am going to judge then I should have an attorney, [at this point the door opens and the agent who left the room apparently returns] regardless at that time I will need an attorney.

Agent 1:       Uh, you are welcome to get an attorney at any time you want.

Rana:          Ok, so I mean, if I am going to the judge there will be an attorney required to represent me, right?

Agent 1:       Um, you have to, um. . .

Agent 2:       You have the right to an attorney, absolutely.

Agent 1:       Yeah, you definitely have the right to an attorney.

Rana:          Yeah, I mean, if it has to be later on then he should be, he will have to go through all this, whatever is going on so he knows . . . Let me pee and then make a decision [Rana is walking out to use the washroom and agents are talking at same time] because if I have to go to the judge then definitely there should be somebody who is supposed to . . . [Rana exits room while still talking].

6.     Rana exits the room to use the washroom at approximately 12:13 pm, and returns to the room at 12:20. The interrogation continues until close to 3:00 pm.

7.     The defense submits that Rana's statements as set forth above represent an invocation of his right to counsel. At that point, questioning should have ceased.

8.     In *Edwards v. Arizona*, 451 U.S. 477 (1981), the Supreme Court held that:

[w]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused [ ] having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Id*. at 484.

9.      Once the right to counsel is invoked, all interrogation must immediately cease until an attorney is present. *James v. Arizona*, 469 U.S. 990, 992 (1984). The cessation of questioning must be scrupulously honored unless and until the accused (1) initiates further discussion related to the investigation, and (2) makes a knowing and intelligent waiver of the right to counsel. *Id.*

10.     The invocation of the right to counsel must be unambiguous. *Davis v. United States*, 512 U.S. 452, 459 (1994). The inquiry into whether a request for counsel was clear is an objective inquiry and the suspect's statements must be viewed in the context in which they were spoken. *Id.* The suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.*

11.     The Seventh Circuit has addressed the issue of whether a statement regarding counsel is to be considered an unambiguous request on a number of occasions. *See*, *e.g.*, *United States v. Shabaz*, 579 F.3d 815, 819 (7th Cir. 2009); *United States v. Peters*, 435 F.3d 746, 752 (7th Cir. 2006); *United States v. Lee*, 413 F.3d 622 (7th Cir. 2005); *Lord v. Duckworth*, 29 F.3d 1216, 1219 (7th Cir. 1994).

12.     In two of its most recent decisions regarding whether a request for counsel is unambiguous, *Shabaz* and *Lee*, the Seventh Circuit has referred to a group of statements which it believes represent unambiguous requests for counsel. *See, Shabaz*, 579 F.3d at 819*; Lee,* 413 F.3d at *626*. Both *Shabaz* and *Lee* discuss the Seventh Circuit's 1994 decision in *Lord* and provide guidance regarding what sorts of statements will be considered unambiguous requests for counsel:

4

> In the *Lord* decision, however, this court mentioned several requests for counsel that it considered unequivocal: "I think I should call my lawyer"; "I have to get me a good lawyer, man. Can I make a phone call?"; "Can I talk to a lawyer? At this point, I think maybe you're looking at me as a suspect, and I should talk to a lawyer. Are you looking at me as a suspect?" *See Lord*, 29 F.3d at 1221 (quoting cases from Eleventh and Ninth Circuits regarding unambiguous invocation of right to counsel). Lee's statement-"Can I have a lawyer?"-was similar to these statements recognized by this court as proper invocations of the right to an attorney.

*Lee*, 413 F.3d at 626.

13.     The distinction between unambiguous statements described in *Lord* such as "I think I should call my lawyer" and ambiguous statements such as the one evaluated in *Shabaz* "am I going to be able to get an attorney?" is that the latter does not clearly imply a present desire to consult with counsel.  *Shabaz*, 579 F.3d at 819.  Moreover, the statements described as unambiguous in *Lord* are not merely indications of a potential desire to consult with counsel; they are statements reflecting an actual desire to consult with counsel.  *Lee*, 413 F.3d at 626.

14.     In the case before the Court, Rana's statements to the agents, along with the context of those statements, make clear that Rana was expressing a present desire to consult with counsel.  At the point of the interrogation set forth above, Rana has just been informed that he was arrested, is being charged with a crime and will be presented to a judge.  Almost immediately upon learning this information, Rana indicates that he "should have an attorney." Rana later states that "definitely there should be somebody."  These statements are consistent with and similar to those deemed unambiguous by the Seventh Circuit.

15.     Moreover, it is clear that Rana was requesting counsel at that time, as opposed to during a future court appearance.  Rana makes this clear by stating, "So then if I am going to judge then I should have an attorney, regardless at that time I will need an attorney."  Rana told

the agents that he should have an attorney now, because when he later appears before a judge he will need an attorney in any event. Rana further makes clear that he is requesting an attorney now by explaining to the agents that the attorney "will have to go through all this," meaning review Rana's statements prior to the court appearance.

16. In light of the above, the defense requests that the Court suppress as evidence in this or any other matter any and all statements made by Rana on October 18, 2009, subsequent to his invocation of his right to counsel.

17. Should the Court determine that matters outside of the statements captured on tape are necessary to resolve this motion, the defense requests an evidentiary hearing.

WHEREFORE, Defendant respectfully requests that the Court enter its order suppressing as evidence in this or any other criminal proceeding, certain statements purportedly made by Defendant Rana on October 18, 2009, subsequent to the invocation of his right to counsel.

Respectfully submitted,

**s/Patrick W. Blegen**
**PATRICK W. BLEGEN**, One of the
Attorneys for Defendant, Tahawwur Rana

**BLEGEN & GARVEY**
53 West Jackson Boulevard, Suite 1437
Chicago, Illinois 60604
(312) 957-0100

6

## CERTIFICATE OF SERVICE

I hereby certify that foregoing Defendant Rana's Under Seal Motion to Suppress Post-Arrest Statement and Request for Evidentiary Hearing was served on November 15, 2010, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

s/ Patrick W. Blegen
**PATRICK W. BLEGEN**
53 West Jackson Boulevard, Suite 1437
Chicago, Illinois 60604
(312) 957-0100