**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 CR 830-4 |
| | ) | Judge Harry D. Leinenweber |
| ILYAS KASHMIRI, *et al.*, | ) | |
| (TAHAWWUR RANA) | ) | |
| | ) | **UNDER SEAL** |
| Defendant. | ) | |

**DEFENDANT RANA'S UNDER SEAL REPLY TO THE
GOVERNMENT'S MEMORANDUM IN OPPOSITION TO HIS
MOTION FOR RELIEF FROM PREJUDICIAL JOINDER OF COUNTS[1]**

Defendant, **TAHAWWUR RANA**, by and through his attorneys, **PATRICK W. BLEGEN**, **CHARLES D. SWIFT**, **JODI L. GARVEY** and **DANIEL A. RUFO**, respectfully submits the following under seal reply to the government's memorandum in opposition to Defendant's motion for relief from prejudicial joinder of counts.

**I.  Defendant's *Ex Parte* Filing Supports the Need for a Severance**

The government argues that Defendant cannot show that he will be forced to present conflicting defenses to the charges. However, as the government acknowledges, Defendant has filed an *ex parte* supplement to his original motion, detailing the specifics of his conflicting defenses and his conflicting need to testify as to the Mumbai counts and to remain silent on the Denmark count. Defendant submits that his *ex parte* filing goes far beyond general assertions and clearly demonstrates the prejudice Defendant will face if forced to stand trial on the Mumbai and Denmark allegations simultaneously. The supplement also makes the requisite "convincing

---

[1] Counsel have filed this document under seal as it discusses discovery marked sensitive by the government.

showing" that Defendant has important testimony regarding the Mumbai counts and a strong need to refrain from testifying as to Denmark. *See*, Gov. Memorandum, p. 12, *quoting United States v. Ervin*, 540 F.3d 623, 629 (7th Cir. 2008).

The government requests that if any portion of the *ex parte* supplement weighs in favor of severance, they be permitted to view such portion and file a response. That request should be denied. The Court is perfectly capable of ruling on this limited issue without the government's input. And, to do otherwise would unnecessarily force disclosure of defense strategy and anticipated testimony.

Moreover, it cannot go unmentioned that from the beginning much of the government's case has been shrouded in secrecy. Large portions of the discovery are classified, requiring review by defense lawyers without any input from Defendant. FISA orders and applications have also been withheld from the defense. When the defense did request disclosure of such documents, the government responded by filing a memorandum which contained numerous classified arguments that the defense was precluded from viewing. Likewise, the government has filed an *ex parte* CIPA Section 4 filing detailing discoverable information that the government seeks to withhold from the defense. If the Court can conduct a review of the FISA applications and orders without defense input, and if the Court can determine whether to provide certain classified materials to the defense without defense input, then the Court can undoubtedly determine whether a severance is required based on *ex parte* information provided by the defense.

**II.     The Government is Incorrect that Much of the Evidence Related to one Conspiracy Charge Would be Admissible as Rule 404(b) Evidence in a Trial on the other Conspiracy.**

The government argues that even if this Court were to grant a severance of Count Eleven from Counts Nine and Twelve, the evidence of the conspiracy to provide material support regarding India would be admissible in a trial of only the Denmark conspiracy. Relying on Federal Rule of Evidence 404(b), the government asserts that such evidence would be admissible to show "plan, knowledge, identity, *modus operandi*, and absence of mistake or accident." Gov. Response, p. 10. However, it is far from clear that such evidence would be admissible under 404(b).

The Seventh Circuit has created a four-prong test, combining both 404(b) and Federal Rule of Evidence 403, to determine the admissibility of "other acts" evidence. *United States v. Smith*, 103 F.3d 600, 603 (7th Cir. 1996). In order to be admitted, evidence of other acts must: "1) be directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; 2) show that the other act is similar enough and close enough in time to be relevant to the matter in issue; 3) be sufficient to support a jury finding that the defendant committed the similar act; and 4) have probative value that is not substantially outweighed by the danger of unfair prejudice." *Id. citing United States v. Mounts*, 35 F.3d 1208, 1214 (7th Cir. 1994).

Applying the four-prong text to the government's argument regarding 404(b) evidence, it is unlikely that evidence regarding India would be admissible at a trial relating only to Denmark. Assuming for the sake of argument that such evidence could be directed at a matter other than propensity, the government cannot meet the second prong of the test. The government has

3

alleged that Defendant allowed David Headley to use an immigration office in Mumbai as cover for his surveillance of Mumbai in preparation for the attacks of November 26, 2008. However, Headley's statements make clear that his surveillance was completed by at least July of 2008, as he then moved back to Pakistan. It is not until six months later, in January of 2009, that Headley first travels to Denmark. It is also telling that there was no immigration office in Denmark, as there was in India. The Denmark allegations and the India allegations are sufficiently distinct and do not occur in a short enough time period for evidence of the India allegations to be admissible in a trial regarding Denmark.

Furthermore, the fourth prong of the admissibility test also weighs against the admissibility of the India allegations in a trial regarding Denmark. As argued in Defendant's initial severance motion, allegations that Defendant is involved in not one, but two, terrorist plots will undoubtedly lead a jury to infer that he is disposed towards terrorism. Rather than weigh the allegations objectively, there is the very real likelihood that a jury will be unfairly prejudiced against Defendant, consider him to be a terrorist, and convict him on the allegations alone, as opposed to the evidence. While the Court can instruct the jury as to the limited use of certain evidence, in this case the incendiary nature of multiple terrorism charges will no doubt lead the jury to ignore, even if unintentionally, such instructions. Given the risk of prejudice in a case such as this, it is unlikely that 404(b) evidence regarding India would be admitted to help prove the Denmark allegations.

**III.    The Government's Argument that the Mumbai Counts and the Denmark Count are Closely Related is not Supported by the Evidence.**

The government contends that the Mumbai counts and Denmark count are closely related, specifically because Lashkar e Tayibba (LeT) Member A was involved in planning the

4

Mumbai attack and subsequently initiated the Denmark plot.  Co-defendant David Headley has told authorities that LeT Member A was initially interested in an attack in Denmark.  But Headley has also related to authorities that LeT Member A's involvement was short lived.  Headley first traveled to Denmark at the behest of LeT Member A in mid-January of 2009.  In March of 2009, however, LeT Member A informed Headley that the attack was being placed on hold because of increased scrutiny over Mumbai.

      Headley then met with Harakat ul Juhad al Islami (HuJI) leader Ilyas Kashmiri and urged him to support the Denmark attack through his group.  Kashmiri informed Headley that he would be able to provide manpower and support for the attack.  From that point on Headley had extensive contact with Kashmiri regarding the attack, both in person and through messages passed by co-defendant Abdur Rehman Hashim Syed.  During the same time period, Headley did not meet with or contact with any members of LeT, including LeT Member A.  As well, while the government now claims that LeT Member A was directly involved in the Denmark attack, neither LeT Member A nor any other LeT member was charged in connection with the Denmark plot.

      Ultimately, the government's argument that the Mumbai counts and Denmark count are closely related falls flat.  The Mumbai charges and the Denmark charge involve different terrorist groups, different regions of the world, different purported motivations and different personnel.  Simply put, the allegations are separate.  As argued above, the prejudice that Defendant would face in defending two separate terrorist plots in the same trial, particularly where he will be forced to present conflicting defenses and cannot exercise his right to testify, warrants a severance.

WHEREFORE, based on the foregoing, Defendant respectfully moves this Court for the entry of an order severing Count Eleven from Counts Nine and Twelve.

Respectfully submitted,

 s/Patrick W. Blegen
**PATRICK W. BLEGEN**, One of the
Attorneys for Defendant, Tahawwur Rana.

**BLEGEN & GARVEY**
53 West Jackson Boulevard, Suite 1437
Chicago, Illinois 60604
(312) 957-0100

**CERTIFICATE OF SERVICE**

   I hereby certify that foregoing Defendant Rana's Under Seal Reply to the Government's Memorandum in Opposition to his Motion for Relief from Prejudicial Joinder of Counts was served on January 4, 2011, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

                <u>s/ Patrick W. Blegen</u>
                **PATRICK W. BLEGEN**
                53 West Jackson Boulevard, Suite 1437
                Chicago, Illinois 60604
                (312) 957-0100