**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>                  **Plaintiff,**<br><br>     **v.**<br><br>**ILYAS KASHMIRI,** *et al.,*<br>**(TAHAWWUR HUSSAIN RANA),**<br><br>                  **Defendants.** | **Case No. 09 CR 830-4**<br><br>**Hon. Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Tahawwur Hussain Rana's ("Rana") Motion for Relief from Prejudicial Joinder of Counts. For the reasons stated below, Defendant's Motion is denied.

### I. INTRODUCTION

Rana has been charged in three counts of a twelve-count superseding indictment for providing material support to terrorists, brought pursuant to 18 U.S.C. § 2339(A). The charges stem from the November 2008 attacks in Mumbai, India, by the Pakistan-based group *Lashkar e Tayyiba* ("Lashkar"), as well as a plot to attack a newspaper building in Denmark. Count Nine relates to the Mumbai attack, Count Eleven to the Denmark plot, and Count Twelve relates to Lashkar. The counts have been joined pursuant to Federal Rule of Criminal Procedure 8(a). Rana argues that the cumulative effect of joining the counts will prejudice

jurors, and that he will be required to present conflicting defenses to the counts. Therefore, he has moved to sever Counts Nine and Twelve from Count Eleven pursuant to Rule 14(a).

The Court granted Rana's Motion to file an *ex parte* supplement to his Motion for Relief from Joinder, and considered the supplement in making this ruling. The Court recognizes the sensitive nature of this filing, and therefore does not divulge the supplement's contents. The Government filed a memorandum opposing this motion that, in part, contained argument that speculated on the content of Rana's *ex parte* filing.

## II. **LEGAL STANDARD**

Offenses can be joined if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a). Courts have a strong interest in joining counts for reasons of efficiency and judicial economy. *See United States v. Stokes*, 211 F.3d 1039, 1042 (7th Cir. 2000). However, under Rule 14(a), "[i]f the joinder of offenses or defendants . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." FED. R. CRIM. P. 14(a). The court has discretion to grant or deny a motion for severance, but a defendant must show actual prejudice from the

joinder of offenses to receive such severance. *See United States v. L'Allier*, 838 F.2d 234, 241 (7th Cir. 1988).

### III. ANALYSIS

#### A. Contradictory Defenses at Trial

Rana argues that joinder will require him to present conflicting defenses to the Mumbai and Denmark counts. He contends that the counts involve separate terrorist plots with separate organizations, which will require separate defense strategies. The Government, on the other hand, argues that Lashkar was involved in both the Mumbai and Denmark plots, making joinder appropriate. Rana acknowledges that Co-Defendant David Headley ("Headley"), who has pleaded guilty to his role in the attacks, admitted in his post-arrest statement that Lashkar Member A — Headley's "handler" who allegedly gave Headley his first surveillance assignment in Mumbai — also gave him his first assignment to plan the Denmark attack. Headley allegedly traveled to Denmark on this assignment in January 2009. Rana alleges that Lashkar Member A withdrew the organization's involvement in the attack in March 2009, and that Headley subsequently met with *Harakat ul Juhad al Islami* ("HJI") leader, and Co-Defendant, Ilyas Kashmiri ("Kashmiri") to urge HJI's support of the Denmark attack. Rana argues that Lashkar had only a brief and nonmaterial involvement with the Denmark plot, which differentiates it from the Mumbai attack. In addition, he argues that the different circumstances surrounding Headley's involvement

in Mumbai and Denmark will require him to present conflicting defenses to the counts.

However, a more thorough examination of the allegations of Rana's and Lashkar's involvement in the Denmark plot shows that a sufficient nexus between the counts exists to warrant joinder under Rule 8(a). The Government alleges that Headley met with Lashkar Member A around October 2008, at which time the first discussion of Headley's surveillance of the *Jyllands-Posten* newspaper offices in Copenhagen and Aarhus occurred. Next, in late December 2008 and early January 2009, Headley allegedly met with Rana to discuss the Denmark plot. At these meetings, Headley allegedly asked Rana for assistance in providing him the same cover as Rana had allegedly provided him for his Mumbai surveillance — allowing him to pose as an employee of Rana's First World Immigration Services ("First World") and open a First World office in Copenhagen. These discussions also involved Headley's plan to gain entry into the newspaper's office by representing that First World wanted to advertise in the paper. In addition, the Government alleges that Rana and Headley printed First World business cards for Headley prior to his trip.

Again, Headley's Denmark trip allegedly occurred in January 2009. While in the country, he allegedly gained access to the *Jyllands-Posten* offices under the pretext of placing an advertisement for First World. On January 29, 2009, Rana, posing

as Headley, allegedly sent an e-mail to the newspaper showing interest in placing this ad. After conducting his Denmark surveillance, Headley allegedly traveled to Pakistan to meet with Lashkar Member A and Co-Defendant Abdur Rehman Hashim Syed ("Syed"), to whom he provided videos of his surveillance. In February 2009, Syed allegedly arranged a meeting between Headley and Kashmiri in Pakistan. In March 2009, after Lashkar Member A told Headley that Lashkar would halt its involvement in the Denmark attack, Headley turned to Kashmiri to receive HJI's assistance with the plot.

Given these allegations, the Government's prosecution of the Denmark count would almost certainly involve allegations and evidence concerning Lashkar, making joinder appropriate between Counts Eleven and Twelve. With allegations concerning Lashkar prevalent in all counts, Rana cannot show actual prejudice from joinder of Count Nine as well. The counts have a sufficiently similar character to warrant joint prosecution. If they were severed, Rana would be subject to cross-examination concerning Lashkar if he testified in either case. Defendant argues that the Government's failure to charge Lashkar Member A or any other Lashkar member in the Denmark plot shows that a tenuous connection exists between Lashkar and the Denmark plot. Rule 8(a), however, does not oblige the Government to bring charges against these other

people in order to join the counts against Defendant. *See* FED. R. CRIM. P. 8(a).

The Court does not rule on whether, if the counts were severed, the evidence concerning Count Nine would be admissible in the prosecution of Count Eleven under Rule 404(b) as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED. R. EVID. 404(b). If this *modus operandi* evidence were admissible in both prosecutions, Rana could not show the prejudice necessary to sever the counts. *See United States v. Rollins*, 301 F.3d 511, 519 (7th Cir. 2002). At this point, however, the Government has not tendered a sufficient argument for Rule 404(b) admissibility. Nevertheless, the denial of Rana's Motion is appropriate considering the common elements and similar character of the Mumbai and Denmark counts.

**B. Potential of Cumulative Evidence to Bias Jurors**

Rana argues that because the charges against him involve two separate terrorist plots, the jury will become incapable of rendering an objective opinion. He argues that the cumulative effect of the evidence presented in a joint prosecution may "lead the jury to infer that [he] is disposed towards terrorism," and it will therefore render a verdict on this inference rather than the facts of the case. The Court acknowledges the incendiary nature of the charges, especially considering the heightened fears and

awareness of terrorism after the attacks of September 11, 2001. A jury, however, after hearing the evidence in the case and being instructed in the law by the Court, is presumed to be able to properly apply the law to the facts before them. *See Sparf v. United States*, 156 U.S. 51, 173 (1895). In addition, the Court can cure the possibility of prejudice through proper jury instructions. *See Zafiro v. United States*, 506 U.S. 534, 540-41 (1993); *Rollins*, 301 F.3d at 519. After all, "juries are presumed to follow instructions." *Zafiro*, 506 U.S. at 540 (internal quotation omitted).

Because the Court can cure potential prejudice by instructing the jury that the Government must prove each count beyond a reasonable doubt, Rana cannot show the required actual prejudice from the effects of cumulative evidence to warrant severance.

### C. Judicial Economy

A final, yet important factor to consider with this Motion is the economic impact of conducting two separate trials. In determining whether to sever counts, a trial court balances the costs to conduct separate trials against the possible prejudice in a single trial. *See United States v. Donaldson*, 978 F.2d 381, 391 (7th Cir. 1992); *Stokes*, 211 F.3d at 1042 ("[J]oinder of offenses reduces the waste of precious judicial and prosecutorial time in the already overburdened federal judicial system and

reduces the burdens on witnesses from testifying at multiple trials.").

Both parties have stated in open court that they do not expect the trial to be short. The proceedings will require a large number of work hours from all parties involved, including the attorneys, the Judge, the Court's staff, and the U.S. Marshals Service. Witnesses may potentially need to travel to Chicago to testify. In addition, given the serious and sensitive nature of the terrorism charges against Rana, the Court will incur considerable expenses in empaneling a jury and bolstering courtroom security. If the Court severs the counts, duplicating these efforts will require significant investments in both human and monetary resources. Given that Rana cannot show that he will suffer actual prejudice from joinder, the costs of conducting two trials outweigh the potential prejudice Rana may suffer from joinder of the three counts.

**IV. CONCLUSION**

For the reasons stated herein, Rana's Motion to Sever Count Eleven of the superseding indictment from Counts Nine and Twelve is denied.

**IT IS SO ORDERED.**

DATE: 1/25/2011

Harry D. Leinenweber, Judge
United States District Court