UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No.   09 CR 830 |
| | ) | |
| v. | ) | Judge Harry D. Leinenweber |
| | ) | |
| | ) | UNDER SEAL |
| TAHAWWUR HUSSAIN RANA | ) | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
DEFENDANT RANA'S UNDER SEAL MOTION TO QUASH ARREST**

The United States of America, by and through its attorney, Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, respectfully submits this Memorandum in Opposition to Defendant Rana's Under Seal Motion to Quash Arrest.

**I.     Background**

Defendant Tahawwur Hussain Rana ("Rana") was arrested on October 18, 2009 without an arrest warrant. After his arrest, defendant was taken to the Chicago office of the Federal Bureau of Investigation ("FBI") for questioning.  The defendant waived his *Miranda* rights, both orally and in writing, and spoke to FBI agents for approximately six hours. The government filed a 47-page complaint the same day as his arrest (09 CR 849, R. 1), alleging that beginning no later than in or about late 2008 and continuing until in or about October 2009, Rana conspired to provide material support and resources, and to conceal and disguise the nature, location, source and ownership of such material support, knowing and intending that they were to be used in the preparation for, and in carrying out a conspiracy to commit acts outside the United States that would constitute the offenses of murder and maiming if committed in the jurisdiction of the United States in violation of Title 18, United States Code, Section 956, all in violation of Title 18, United States Code, Section 2339A.

More simply, the complaint alleged that there was a conspiracy between Headley, Abdur Rehman Hashim Syed ("Pasha"), Ilyas Kashmiri and others to commit a terrorist attack on the *Jyllands-Posten* newspaper facility in Denmark, and that Rana conspired with Headley and others to provide material support to that conspiracy.

Defendant now argues that probable cause did not exist to support his arrest, and moves to suppress his post-arrest statements as the fruit of an illegal arrest. Defendant makes very little argument relating to the volume of evidence known to the arresting agents prior to Rana's arrest and outlined in the criminal complaint filed against Rana later that day, including a recorded conversation between Headley and Rana about "target[s]" for attacks that included "Denmark." Further, defendant Rana makes no argument relating to additional evidence outlined in an affidavit for a search warrant submitted on October 9, 2009 (before Rana's arrest) and thus was known to law enforcement prior to Rana's arrest. The information, which is merely summarized below, provided sufficient probable cause to support the arrest of Rana on October 18, 2009.

Instead of addressing this evidence,[1] Rana simply points to statements made by David Headley during his post-arrest interview, arguing that Headley's "explanations" about Rana, who Headley identified as his "only" friend, and his later refusal to answer any questions about Rana (as well as Headley's wife) so undercut the evidence against Rana such that there was no probable cause to arrest Rana. Considering the totality of the evidence, which is merely summarized below, this is

---

[1]     The Court previously has reviewed some of the evidence known to the arresting agents when considering Rana's appeal of the detention order entered by Magistrate Judge Nolan. At that time, the Court noted that Rana "contends that he was duped by David Headley, but the evidence in the form of recorded conversations, while not conclusive, appears to corroborate the Government's contention **that he was a knowing ally of Headley and had been acquainted in advance of the Mumbai attacks**." R. 69 (emphases supplied).

simply not the case. Because Rana's arrest was legally supported by probable cause, this Court should not suppress Rana's post-arrest statements.

## II.     There was Probable Cause to Arrest Rana

### A.     Evidence Known to the Arresting Agents

The evidence known to the arresting agents established probable cause to believe that David Headley, Pasha, Ilyas Kashmiri and others were conspiring to commit the acts of murder and maiming in Denmark, and that Rana knowingly conspired with Headley to provide and conceal the material support to their efforts. In summary, the evidence established that:

*The Cartoons*

In September 2005, the *Jyllands-Posten* published an article that contained cartoons depicting the Prophet Mohammed. (R. 1, ¶33). There was significant violence and controversy in response to the cartoons. Headley, in particular, posted a message to a Yahoo chat group, the members of which were alumni of a military school that both Headley and Rana attended in Pakistan, that stated that he was "disposed towards violence for the offending parties, be they cartoonists from Denmark [and others]". (*Id.* ¶35). Email records established that Headley prepared a list of items for himself in early December 2008, entitled "Mickey Mouse" that mentioned the location of the newspaper's Copenhagen location ("Kings Square"), ideas for how to gain entry ("Ad? (Lost luggage)(Business)(Entry?)"), and other items relating to Headley's tasking to perform surveillance of the facility. (*Id.* ¶36)

*Planning for MMP*

Later in December 2008, Headley sent an email to Pasha, stating, in part, that he would be "going for the Mickey Mouse Project in the north in the middle of next month." (*Id.* ¶38) About a

week later, Headley then asked Pasha to send him "info on the mickey mouse project" and asked when he should go. (*Id.* ¶39) After Pasha responded that Headley should go "as early as possible," Headley responded that Rana had gone to Canada. (*Id.* ¶40) Pasha responded, asking if Rana was "terrified or relaxed." (*Id.* ¶42) Headley then told Pasha that Rana was performing "Zihan saazi [preparing someone to perform an act] asking if this happens you should act like this and if that happens you should do that." (*Id.*) Further, Headley stated that he would not leave right away because, in part, he needed to "consult" with Rana. (*Id.* ¶43) Headley told Pasha that he would travel for "MMP" after the new year and "spend a week or so the first time to get a feel of the property." (*Id.*)

*Headley Requests Rana's Assistance During his First Reconnaissance Trip to Copenhagen*

In January 2009, Headley traveled to Copenhagen. On January 19, 2009, Headley emailed Rana that he (Headley) was "going right now to see if I can put an ad for our company and also check the feasibility to open up an office here." (*Id.* ¶46). The following day, Headley emailed Rana with the subject "Copenhagen Important," telling Rana that he had visited the newspaper and left a "card." (*Id.* ¶47) Accordingly, Headley asked Rana to preserve his cover story, stating "ask NY and Toronto offices to remember me." (*Id.*) Later that same day, Headley stated "please tell ALL our offices if they receive a call about me, to please confirm my job there." (*Id.* ¶48 (emphasis in original)).

To further protect his cover story, Headley also asked Rana to look out for an email from the newspaper. (*Id.* ¶49). When the newspaper, in fact, emailed Headley, Rana responded, stating, in part, that he was "trying to coordinate with a local attorney in Denmark for taking care of our clients locally." (*Id.* ¶51) In sending this response, Rana falsely posed as Headley. (*Id.*) The idea that

Headley and Rana were actually interested in operating an immigration office in Denmark was implausible for several reasons, as outlined in paragraph 53 of the complaint. (*Id.* ¶53) Further, following his arrest, Headley admitted that he was in Copenhagen to perform surveillance as part of planning an attack.

*Rana's Creation of Coded Account*

Following Headley's surveillance trip to Copenhagen, Headley traveled back to Pakistan. On March 3, 2009, Headley emailed Rana expressing concern about being "incapacitated." (*Id.* ¶56) In response, Rana sent a coded email to Headley establishing a new, separate email account for them to communicate. Rana's email stated in part:

> One of my brothers is Brigadier **Mov**adat Hussain Rana and the other is Sibte Hussain Rana **monie.** They are in Rawalpindi. I really admire emails making it instant half mulaquat especially **yahoo** as it seems superior to hotmail. Talk to you later.

(Emphasis supplied) Records reveal that the mov.monie@yahoo account was created at Rana's business. (*Id.* ¶57) The subscriber was listed as "Mr. Mov Monie" with a birthdate exactly one digit off from the month, date and year of Rana's actual birthday. (*Id.*) On the same day that the account was created, Headley emailed Rana on the new account that Rana had created, instructing him to call Pasha. (*Id.* ¶58) When Headley later returned to the United States in June, Rana again helped to arrange this travel. (*Id.* ¶61)

*Communications with Lashkar Member Sajid*

As outlined in paragraphs 63 through 74 of the complaint filed against Rana, Headley communicated by email with Lashkar e Taiba member Sajid Mir throughout July and August 2009. In summary, Sajid Mir requested that Headley visit Pakistan to discuss the planning of an attack in

India. In response, Headley asked if Sajid was still interested in the "Northern Project," another code name for the attack planning in Denmark, and asked if whether he would be performing surveillance as he had done for Sajid in advance of the November 2008 Mumbai attacks. Among other statements in the back-and-forth emails, Headley asked "the visit to Rahul's place [India], is it for checking out real estate property like before." (*Id.* ¶70)

*Second Reconnaissance Trip to Copenhagen*

In August 2009, Headley returned to Copenhagen to once again perform surveillance of the *Jyllands-Posten* facility. While in Copenhagen, Headley took short videos of several locations in Copenhagen. When later arrested (in October 2009), the government seized these videos from Headley's luggage. (*Id.* ¶110) As before, Rana made travel arrangements for Headley. Upon his return, Headley falsely told a Customs and Border Inspector that he was a consultant for Rana's business. (*Id.* ¶77)

As described in more detail in the complaint, throughout August and September, Headley and Pasha spoke by phone and otherwise communicated about continued planning for an attack in Denmark. They awaited word from Ilyas Kashmiri, with whom Headley and Pasha had discussed the potential attack. Headley discussed options, including Option "B" ("I [Headley] can do it on my own") if communications with "doctor [Kashmiri]" failed or if the "doctor" and his people were otherwise unable to assist ("if they are not fulfilling on it"). (*Id.* ¶85)

On September 4, 2009, Rana and Pasha had a coded conversation, wherein Rana asked Pasha about having been arrested in July 2009. Rana stated "you remember when you had fever during that time – did you ever faint due to the fever?" Pasha responded "no, no, no, no, no no . . there wasn't any problem." (*Id.* ¶87) On September 7, 2009, Headley and Pasha talked about whether Pasha had

been able to convey certain information to Kashmiri (Headley: "you need to tell him everything").

(*Id.*, ¶89) That same day, Headley and Rana discussed the same issue. Headley explained to Rana

that "Pasha has not been able to pass on the report to him [Kashmiri]." (*Id.* ¶91)

*Rana and Headley Discuss "Targets"*

In the same September 7, 2009 conversation between Rana and Headley, they discussed and

named multiple targets of their planning. Headley listed four targets, one of which was "Denmark."

(*Id.* ¶92) Later in the conversation, Headley added a fifth target: "oh my friend, not four, five, five."

While Rana laughed, Headley stated "Defense College" twice, and Rana commented "right, this is

it. I knew already." After other discussion, Rana continued "That one, uh, I thought that was the

target." Although this conversation was mainly in Urdu, Rana used the English word "target." (*Id.*)

*Rana and Headley Discuss News of Kashmiri*

Later in September, there were press reports that Ilyas Kashmiri was killed in a drone attack.

On September 14, 2009, Headley related the news to Rana, who responded "pray that this should not

have happened." (*Id.* ¶96) Following the news of Kashmiri's alleged death (the reports turned out

to be inaccurate), Headley and Pasha discussed returning to Lashkar Member Sajid Mir to continue

planning for the Denmark attack, but (referring to the above-described emails) Headley noted that

Sajid was focused on India ("their eyes are again in that direction"). (*Id.* ¶99)

On September 18, 2009, Headley forwarded a news article about Kashmiri to Rana. (*Id.*

¶¶25, 102) Among other details, the article identified Kashmiri as one of the most dangerous

al Qaeda-linked Pakistani commanders, that he had been charged with murder and kidnaping, and

that he was number 4 on Pakistan's Most Wanted List. (*Id.*) After learning a few days later that

Kashmiri was alive after all, Rana reacted to the news: "wow, all praise be to God." (*Id.* ¶108)

Headley also learned that Kashmiri was asking about him (Headley), and Headley had plans to travel to Pakistan. (*Id.* ¶107)

Before Headley traveled to Pakistan, Rana made efforts to obtain a visa for Headley by contacting the Consul General at the Pakistani Consulate in Chicago. Rana, Headley and the Consul General all went to school together, however, the Consul General knew Headley only by his birth name (Gilani). Despite the fact that they knew each other, Rana stated only that he wished to obtain a visa for a white American who had no Pakistani background at all. When the Consul General suggested that Rana send his friend to the Consulate, Rana explained that he sent his friend elsewhere to take care of some unspecified business so that someone else would visit. It was clear from the conversation that Rana was attempting to deceive the Consul General into issuing the visa without knowing for whom the visa was issued. (*Id.* ¶ 106) A few days later, agents arrested Headley at O'Hare Airport, where he was intending to travel to Pakistan after stopping in Philadelphia. (*Id.* ¶¶109-110)

**B.     Additional Evidence Known To Arresting Agents**

In addition to that evidence outlined in the criminal complaint against Rana, the arresting agents had developed other information before the arrest of Rana. In summary, the evidence established that Headley had conducted surveillance in advance of the November 2008 Mumbai attacks and used Rana's business as cover. Further, the evidence established that Rana was told in advance of the Mumbai attacks that they were about to begin.

Credit card records established that Headley traveled to Mumbai, India on multiple occasions between 2006 and 2008. The records established that Headley visited the Taj Mahal hotel, stayed at the Oberoi Hotel, and made purchases in the vicinity of the Nariman Chabad House and Mumbai's

central railway station. (Exhibit A, ¶39-42) These were four of the five sites attacked during the November 2008 Mumbai attacks. Emails established that prior to the attacks, Headley had opened an immigration office that was affiliated with Rana's business, and this office was closed days after the attacks. (*Id.* ¶43) Following his arrest, Headley admitted that he conducted extensive surveillance in Mumbai at the direction of Lahskar e Taiba. (*Id.* ¶44) Headley said that he established the Mumbai office for Rana's business as cover for his surveillance activities. (*Id.*) Further, Headley confirmed that the references to "checking out real estate property like before" and "back and forth like before" in the emails between him and Sajid were references to the type of reconnaissance that he performed prior to the Mumbai attacks. (*Id.* ¶88) Further, paragraphs 45 and 46 described an intercepted conversation from September 7, 2009, where Rana acknowledged that he was told by Pasha days before the Mumbai attacks that they were about to occur. (*Id.* ¶45-46).

## II.    The District Court Should Deny Defendant's Motion to Quash the Arrest

### A.    Legal Standard for Motion to Quash

Probable cause for an arrest exists when the law enforcement agents could reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense. *United States v. Carrillo,* 269 F.3d 761, 766 (7th Cir. 2001); *United States v. Rosario,* 234 F.3d 347, 350 (7th Cir. 2000); *United States v. Kincaid,* 212 F.3d 1025, 1028 (7th. Cir. 2000). "This determination is necessarily based on probabilities, and does not require 'evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Carrillo*, 269 F.3d at 766 (quoting *United States v. Faison,* 195 F.3d 890, 893 (7th Cir. 1999) (citations omitted)). In determining whether suspicious circumstances rise to the level of probable cause, law enforcement

officers are entitled to draw reasonable inferences based on their own training and experience. *Carrillo,* 269 F.3d at 766. The mere existence of innocent explanations does not necessarily negate probable cause. *United States v. Funches,* 327 F.3d 582, 587 (7th Cir. 2003). "[C]ourts must focus on the real world situation as known to the officer at that time. The question is whether they had a reasonable belief at the time." *United States v. Reed,* 443 F.3d 600, 603 (7th Cir. 2006).

As described above, there was more than sufficient evidence to establish probable cause at the time of Rana's arrest. The emails and recorded conversations, the seized videos and other evidence described in the complaint filed the same day as Rana's arrest established that Headley, Pasha and Ilyas Kashmiri were conspiring to plan an attack on the *Jyllands-Posten* facility in Denmark. Further, these same emails, recorded conversations and other evidence made clear that Rana knowingly conspired to provide and conceal the material support provided to these efforts. As the Court previously has noted, this evidence corroborated the government's contention that Rana was a "knowing ally of Headley." (R. 69, at 1) Among other facts, the emails and recorded conversations established that:

-Headley needed to "consult" with Rana before traveling to Copenhagen to perform surveillance,

-Rana was performing "Zihaan saazi" (preparing Headley) before the trip to Copenhagen,

-Headley, while in Copenhagen, requested Rana to contact other First World offices to preserve his cover story after gaining entry into the newspaper facility,

-Rana falsely posed as Headley in sending an email to that newspaper to advance the cover story that they were interested in advertising,

-Rana used code to communicate with Headley about his creating of an email account

10

(mov.monie@yahoo) for their communications,

-Rana expressed concern when Pasha was arrested in Pakistan,

-Headley informed Rana that Kashmiri (with whom Rana knew that Pasha and Headley were communicating) was one of al Qaeda's most dangerous commanders and was wanted for murder and kidnaping,

-Headley continually reported to Rana on his (Headley's) and Pasha's efforts to communicate with Kashmiri,

-Rana misled the Pakistani Consulate to get a visa for Headley, and

-Headley and Rana discussed five "targets" for attacks, including "Denmark"

The above is merely a summary of the facts that the emails and recorded conversations demonstrated. These facts, and the reasonable inferences that the arresting agents were entitled to draw, established probable cause to arrest Rana.

## B.    Headley's Post-Arrest Refusal to Talk about Rana

Defendant does not address the evidence outlined above.  Instead, he essentially argues that the government lacked probable cause to arrest Rana because his friend, Headley, "provided explanations contradicting the agents' suspicions regarding Rana." (Motion, at 3)  The offering of an innocent explanation, however, does not negate probable cause, especially where the totality of the circumstances shows the explanation to be unlikely or even implausible. *Reed,* 443 F.3d at 603; *Funches,* 327 F.3d at 587.  Considering the totality of the evidence, as described above, Headley's initial efforts to distance Rana from the conspiracy, and his refusal to discuss Rana or his (Headley's) wife, did not negate the probable cause established by the evidence.  Headley repeatedly refused to talk about Rana, noting that "I just have only one friend, that's Dr. Rana."  Headley stated:

> . . . he's the only one [friend]. . . . And uh, and I would not like to answer questions about either him or my wife. . . . Because um . . . they're not, uh, they're not involved in anything . . . and if . . . if, you're going to, I have to say I know . . . they, they do know something . . . it's, it's . . . like my wife knows something or Dr. Rana knows something . . . it's just because of their closeness to me, and they should, I don't feel that they should uh, uh you know, be targeted not only for . . . for, for that, that's it.

(Attached hereto as Exhibit B is a preliminary transcript of Headley's video-taped post-arrest statement, at USDOJ_ 04-945-96). Shortly after identifying him as his only friend, Headley again stated that he did not want to talk about Rana:

> And I also mentioned that anything that's incriminating Dr. Rana . . . uh, I'm not gonna . . .anything else you want me to do, I'll give my life.

(Ex. B, USDOJ_04-1144) Considering the totality of the evidence, Headley's refusal to discuss the defendant and his efforts at explanation did not negate probable cause. As outlined above, the emails and recorded conversations, including Rana's discussion with Headley of "Denmark" as a "target," established that Rana knew about Headley's activities with Pasha and Kashmiri and conspired to provide and conceal the material support provided thereto.

###  C.     No Evidentiary Hearing is Necessary

The government submits that the allegations in the 47-page sworn complaint filed the same day as Rana's arrest relating to email communications, recorded conversations and other evidence established that there was probable cause to arrest Rana. Headley's efforts to provide explanations and his initial refusals to discuss Rana, when considered in the totality of the circumstances, do not negate that probable cause. *Reed,* 443 F.3d at 603; *Funches,* 327 F.3d at 587. The Court already has reviewed the emails and recordings in its consideration of Rana's request for a bond, and considering that Headley's post-arrest statement were video-taped such that there is no factual issue as to what he said (at least for purposes of this motion), the government submits that the defendant

has failed to meet his burden to demonstrate that an evidentiary hearing is necessary. *United States*

*v. Rodriguez,* 69 F.3d 136, 141 (7ᵗʰ Cir. 1995).

      WHEREFORE, the government respectfully requests that defendant's motion be denied.


                    Respectfully submitted,

                    PATRICK J. FITZGERALD
                    United States Attorney

        By: /s/ Daniel J. Collins
             DANIEL J. COLLINS
             VICTORIA J. PETERS
             SARAH E. STREICKER
             Assistant United States Attorney
             219 South Dearborn Street,5th Floor
             Chicago, Illinois 60604
             (312) 886-3482