**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09 CR 830-7 |
| ) | Judge Harry D. Leinenweber |
| ILYAS KASHMIRI, *et al.,* ) | |
| (TAHAWWUR HUSSAIN RANA), ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT RANA'S RESPONSE TO
THE GOVERNMENT'S *SANTIAGO* PROFFER**

Defendant, **TAHAWWUR RANA,** by and through his attorneys, **PATRICK W. BLEGEN**, **CHARLES D. SWIFT**, **JODI L. GARVEY**, and **DANIEL A. RUFO**, pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence, the Due Process and Effective Assistance of Counsel clauses of the Fifth and Sixth Amendments to the Constitution of the United States, as well as the principles announced by the Supreme Court in *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775 (1987) and its progeny, hereby responds to the government's *Santiago* proffer regarding admission of coconspirator statements.

**I.     Federal Rule of Evidence 801(d)(2)(E)**

Under Federal Rule of Evidence 801(d)(2)(E), a hearsay statement offered by the Government and made by a coconspirator may be admitted into evidence only if the Government shows: a) a conspiracy existed; b) the Defendant and the declarant were both members of the same conspiracy;[1] and c) the proffered hearsay statements were made during the course of and in

---

[1] As discussed herein, this factor is critical in this case. There are five charged conspiracies and Defendant is alleged to have been a member of only two.

furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Haynie*, 179 F. 3d 1048, 1050 (7th Cir. 1999). The Government has the burden of proving all of these elements by a preponderance of the evidence. *See Bourjaily*, 483 U.S. at 175; *Haynie*, 179 F. 3d at 1050. In addition, the Government should be required to identify the coconspirators and the hearsay statements attributed to each coconspirator they are seeking to introduce. *United States v. Warner*, 396 F. Supp. 2d 924, 944(N.D. Ill. 2005); *United States v. Arnaout*, No. 02 CR 892, 2003 WL 255226 (N.D. Ill. Feb. 4, 2003)(Exhibit A); *United States v. Bainbridge Management*, L.P., Nos. 01 CR 469-1, 01 CR 469-6, 2002 WL 31006135 (N.D. Ill. Sept. 5, 2002).

      The Government has failed to comply with these requirements. It is impossible to discern from the Proffer how Rana conspired with many of the named individuals. The Government never provides a complete list of the specific alleged coconspirators who it does not intend to call at trial but whose statements to others it still wishes to introduce against Defendant. Moreover, but for a few exceptions, the Proffer fails to identify the particular statements it intends to seek to introduce. Finally, the Proffer fails to establish by a preponderance of the evidence the existence of a single unified conspiracy and fails to establishes through admissible, non-hearsay evidence that Defendant agreed to join this single overarching conspiracy.

**II.**    **The Government has not proven by a preponderance of the evidence that Defendant joined a single overarching conspiracy.**

      As the government's *Santiago* proffer makes clear, Rana's alleged involvement in the conspiracies charged in Counts Nine and Twelve of the second superseding indictment is, at best, very limited. Rana is not alleged to have done anything substantive in relation to either the attacks in Mumbai or the plot in Denmark. Rather, he is alleged to have provided, essentially,

"cover" and travel assistance to David Headley.

In essence, the government's proffered evidence against Rana reveals an attempt to prove conspiratorial membership by association with Headley, as well as the piling of inference upon inference, and the government's conclusion that Rana must have known what Headley was up to. What the government's proffer utterly fails to provide, however, is any evidence, direct, circumstantial, or otherwise, that Rana was a *knowing* and *intentional* member of a conspiracy or common scheme to attack Mumbai, attack the offices of the Jyllands-Posten, or provide material support to either plot.

The government's evidence against Rana appears to amount to little more than his friendship and business relationship with David Headley, and Headley's anticipated testimony that Rana was actually involved more deeply than the evidence shows. What the *Santiago* proffer reveals, without directly saying, is that Rana had nothing to do with the actual plots. Rana had absolutely no contact with Zaki, Muzzammill, Sajid, Qahafa, or Al Qama. Rather, Rana's primary contact was Headley.[2] It is Headley who then communicated with the majority of the coconspirators.

The government's proffered evidence regarding Rana runs afoul of several oft-cited precepts of conspiracy law, all of which argue against the finding of conspiratorial membership in this instance. For example, and most notably, it is a time honored consideration that mere association with conspirators is insufficient to prove a defendant's participation or membership in a conspiracy. *United States v. Garcia*, 562 F.2d 411, 414 (7th Cir. 1977). Even knowledge that something illegal is going on, standing alone, is not proof of a conspiracy. *United States v.*

---

[2]Rana had limited contact with Pasha, but that contact related primarily to business.

3

*Fagan*, 35 F.3d 1203, 1207 (7th Cir. 1994). Moreover, the determination regarding whether a defendant joined a conspiracy may only be based on the defendants own acts and words.[3] *United States v. Martinez de Ortiz*, 907 F.2d 629 (7th Cir. 1990). And, while conspiracies may be proven circumstantially, a conspiracy conviction cannot be sustained via the piling of inference upon inference. *Ingram v. United States*, 360 U.S. 672, 680 (7th Cir. 1959); *cited with approval in United States v. Sullivan*, 903 F.2d 1093, 1099 (7th Cir. 1990).[4]

      An examination of these factors, and the totality of the facts and circumstances set forth in the government's proffer, leads to the inescapable conclusion that coconspirator statements, should the government ultimately identify them, cannot, and should not, be admitted even conditionally against Rana.

      The second superseding indictment alleges five different conspiracies, including two conspiracies regarding the Mumbai attacks, one conspiracy regarding the plot in Denmark, and two conspiracies to provide material support to terrorism. Rana's alleged involvement is limited to the two material support conspiracies. While it is true that 801(d)(2)(E) does not require an actual conspiracy charge, the government still must prove the existence of a joint venture for an illegal purpose. *United States v. Gil*, 604 F.2d 546, 549 (7th Cir. 1979). The government's proffer appears to assert that the statements of everyone defendant named in the indictment, and other individuals not named as defendants, are admissible against Rana because, despite his

---

[3] The words and acts of other persons may only be used to decide what the defendant did or said, or to understand what the defendant did or said. *See*, *Martinez de Ortiz*, *supra*.

[4] While not a general conspiracy principle, it is also apparent that 801(d)(2)(E) statements are not admissible against a defendant unless he has joined the conspiracy in question. His association with conspirators, or even participation with them in a different conspiracy, does not make hearsay statements admissible against him. *See*, *United States v. Murphy*, 193 F3d 1, 5 (1st Cir. 1999); *United States v. Ciampaglia*, 628 F.2d 632, 638 (1st Cir. 1980); *United States v. Coe*, 718 F.2d 830 (7th Cir. 1983).

alleged involvement with only Headley, and to a lesser extent, Pasha, Rana somehow joined a conspiracy with people he has no association whatsoever. This Court should preclude such statements as the government has provided no evidence that Rana ever conspired with many of the individuals named in the *Santiago* proffer. *United States v. Townsend*, 924 F.2d 1385, 1388 (1991) (There is a "need to ensure that [the coconspirator exception] is invoked only against those who have actually conspired with the declarant.")

Based upon all of the foregoing, Defendant respectfully requests that Court deny the government's request to admit coconspirator statements against Rana pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence.

### III. The Government Should be Required to Provide a List of the Statements it Intends to Admit Pursuant to 801(d)(2)(E).

The purpose of a *Santiago* proffer is not only to give the government a chance to prove by a preponderance of the evidence that a conspiracy existed and that Defendant was a member; the proffer must also establish that the proffered hearsay statements were made during the course of and in furtherance of the conspiracy. Despite indicating that it had done so, it does not appear that the government has set forth "the general categories of coconspirator statements for which a pre-trial ruling by the Court is requested." *Santiago* Proffer, p. 4. Counsel submit that, given the inherent complexities of a case involving five conspiracies, multiple countries, numerous terrorist groups, intelligence agencies, and countless individuals, the government should be required to identify specifically which statements it intends to produce, and proffer how it believes those statements were made during the course of and in furtherance of a conspiracy. Absent such identification, the admissibility of coconspirator statements will hinge on the ability

5

of the defense to object on the fly and the Court to rule in a matter of moments.

In *United States v. Warner*, 02 CR 506, the government was required to "provide a representative sample of statements about which" witnesses would testify, including "statements made 'during the course and in furtherance of the conspiracy.'" *United States v. Warner*, 396 F. Supp. 2d 924, 944 (N.D. Ill. 2005, *quoting Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775 (1987). Counsel submit that, at the very least, such a procedure should be followed here. Allowing the government to avoid delineating specific statements will put the Court and the defense in the awkward situation of addressing the admissibility of statements *after*, or if counsel can anticipate that a proposed coconspirator statement is coming, immediately before, the statements have been heard by the jury. Rule 801(d)(2)(E) is designed to protect Defendants. *United States v. Johnson*, 927 F.2d 999, 1003 (7th Cir. 1991).[5] The government's *Santiago* proffer here, however, gives Defendant little opportunity to object before trial.

## IV. The Government Should be Required to List the Coconspirators

The government has provided final transcripts of 52 recordings that it intends to introduce at trial. While many of these recordings are of conversations involving Rana, or of statements between named coconspirators such as Headley and Pasha, there are also statements that do not appear to be between coconspirators. For instance, the government has provided

---

[5]*Johnson* also makes clear that coconspirator statements are only admissible under 801(d)(2)(E), and cannot be admitted through any other hearsay exception:

> A rule allowing co-conspirator statements to be admitted whenever any hearsay exception is satisfied would undermine the purpose of Rule 80 I (d)(2)(E), which is to protect defendants in conspiracy trials from co-conspirator statements that by their nature are highly unreliable. . . We decline to broaden the traditional hearsay rule which excludes a co-conspirator statement offered for its truth unless it is made in furtherance of the conspiracy.

> *Id*. at 1003

transcripts of several conversations between Headley and his brother Hamza. However, the *Santiago* proffer makes no mention of Hamza as a coconspirator. Furthermore, the government provided translations of recorded conversations between Headley and his aunt, his paternal uncle, and an unidentified male. It is unclear from the government's proffer if Headley's relatives are coconspirators for purposes of the admissibility of these conversations. If they are not coconspirators, then the conversations are inadmissible hearsay.

The government has also included transcripts of recorded conversations between Rana and a number of people not alleged to be coconspirators, such as his brother Qaiser, Pakistani consulate official Aman Rasheed, another individual from the Pakistani consulate named Taj, and several other individuals. These individuals do not appear to be coconspirators and therefore, their statements should not be admitted for the truth under Rule 801(d)(2)(E). Rather, they may be introduced only to provide context for Rana's statements.

In order to resolve the ambiguities regarding the government's intent to introduce coconspirator statements, the Court should require the government to delineate who it believes to be members of which conspiracy. Should the government seek to admit the statements of any non-conspirator, the Court should also provide a limiting instruction informing the jury that certain statements are not to be admitted for the truth of the matter asserted, but only for a separate purpose.

Respectfully submitted,

**s/Patrick W. Blegen**
**PATRICK W. BLEGEN**, One of the
Attorneys for Defendant, Tahawwur Rana.

**PATRICK W. BLEGEN**
53 West Jackson Boulevard, Suite 1437
Chicago, Illinois 60604
(312) 957-0100

**CERTIFICATE OF SERVICE**

      I hereby certify that foregoing Defendant Rana's Response to the Government's *Santiago* Proffer was served on May 6, 2011, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

                                                  s/ Patrick W. Blegen
                                                 **PATRICK W. BLEGEN**
                                                 53 West Jackson Boulevard, Suite 1437
                                                 Chicago, Illinois 60604
                                                 (312) 957-0100