UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | 09 CR 830 |
| v. | ) | |
| | ) | Judge Harry D. Leinenweber |
| | ) | |
| TAHAWWUR HUSSAIN RANA | ) | **UNDER SEAL** |

**GOVERNMENT'S MOTION TO RECONSIDER THE
COURT'S RULING REGARDING THE DENMARK VIDEO**

The United States of America, by its attorney, Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, respectfully submits this Motion to Reconsider the Court's Ruling Regarding the Denmark Video.

**I.    INTRODUCTION**

On May 6, 2011, this court ruled, in response to a defense motion in limine, that the government may not introduce three books relating to jihad, two videos relating to jihad, and tapes of four speeches made by leaders of *Lashkar e Tayyiba*, all in the Urdu language.  In precluding this evidence, the court expressed concern that because no translations had been provided, jurors will be unable to determine whether the contents of the in question items accurately reflect their titles.  It also observed that the contents of books and similar materials do not necessarily reflect the beliefs of those who possess them.

The government seeks reconsideration of one aspect of this court's ruling, namely the preclusion of what the parties and court have referred to as the "Denmark video."  To assist the court in considering this motion, the government has provided the court with both a copy

of the video and a draft translation. The draft translation was completed and produced to defense counsel on May 9, 2011. As set forth below, the video is highly probative of the nature of the relationship and communications between defendant and Headley, and is powerful evidence rebutting defendant's anticipated claim that he was duped by Headley into providing logistical assistance that facilitated Headley's terrorist activities. The video is not offered simply to show that defendant had views consistent with the content of the video.

While the government regrets the delay in producing the transcript to defense counsel, it provided defendant with a copy of the video in November 2009, shortly after his arrest, and described the video's contents and significance in a court filing on November 6, 2009. Defendant never requested a transcript of the video before filing a motion to exclude it, no deadline was ever set by the court for production of a transcript, and because defendant speaks the language used in the video, he has had ample opportunity since November 2009 to review it and discuss its contents with counsel. Moreover, in light of the delay in preparing the transcript of the video, the government would, should this court reconsider its ruling, postpone offering the video into evidence until the end of its case (estimated to be at least three weeks) and commit to providing defense counsel with a final transcript, which will include times corresponding to the video, by Friday, May 13. This would provide sufficient opportunity for defendant to evaluate and challenge the accuracy of the government's transcript. Excluding a key video recording, which was produced 18 months before trial and in the defendant's native language, because of the government's tardiness

2

in producing a translated transcript, is an excessive sanction under these circumstances, particularly absent any prejudice to defendant from the delay in producing the transcript.

## II. FACTUAL BACKGROUND

The central issue at trial will be whether defendant acted wittingly or unwittingly when he provided logistical assistance to co-defendant David Headley as Headley conducted surveillance for the Mamba terrorist attacks and planned a terrorist attack on the *Jyllands Posten* newspaper in Denmark, which had published controversial cartoons of the Prophet Mohammed. Headley will testify that in approximately July 2009, while he was preparing the attack in Denmark, and less than one month before he traveled to Denmark with defendant's assistance, he provided defendant with a copy of the Denmark video, along with another jihad video (the "Red Mosque" video, the exclusion of which the government does not ask the court to reconsider). Headley will further testify that he had discussed with defendant his plans to attack the *Jyllands Posten*, and in particular the cartoonist Kurt Westergaard and the newspaper's cultural editor, Flemming Rose, and that he gave defendant the Denmark video – and discussed it with him – to encourage defendant to continue assisting him as he planned the Denmark attack. Agents recovered the Denmark video in a search of defendant's residence on October 18, 2009, loose on a table near the television set in defendant's living room, without a case or cover. Headley will testify that he and defendant watched the "Red Mosque" video with defendant on the television in the living room from which the Denmark video was recovered.

On November 6, 2009, the "Government's Second Memorandum In Support Of Motion For Detention Pending Trial" described the video as follows:

> The most compelling proof of how the attack against the newspaper or its employees would be viewed as an attack against Denmark by those who would carry out the attack or facilitate it is a video entitled "Bombing of Denmark Embassy." That video was contained on a DVD recovered from the living room of defendant Rana's home on October 18, 2009. The DVD was produced by As Sahab Media, commonly acknowledged to be the media wing of al Qaeda.[1] The video is narrated by Abu Yahya al-Libi, an al Qaeda spokesman who reportedly escaped from American custody in Afghanistan. Mustafa Abu al-Yazid, the third ranking al Qaeda member, also appears on the video. The video is fifty-four minutes in length and is focused principally on the controversy involving the *Jyllands-Posten* cartoons, explicitly calling for violent action to retaliate against Denmark.
>
> Early in the video, footage of then Danish Prime Minister Anders Fogh Rasmussen is featured prominently. He is quoted as defending the cartoons as an expression of freedom of speech, and stating that Demark will soon send troops to Afghanistan to assist the United States and the United Kingdom in the war against terror. Kurt Westergaard, the cartoonist, is also shown, quoted as stating that the cartoons were a way to fight extremists and that he did not regret their publication. Strong comments then followed from the narrators, condemning the United States, Denmark and Jewish people, among others, for a litany of perceived outrages. The video also featured footage of a full-screen Danish flag set against a background of flames.
>
> The video prominently features the martyrdom video of the man who carried out a suicide car bombing of the Danish Embassy in Islamabad, Pakistan, on June 2, 2008. (According to numerous international news reports, the car bomb killed at least six persons, injured 27 and left a crater at the front of the embassy.). The bomber was filmed speaking while wearing what appears to be a suicide vest, and he posed outside the white car which was evidently used to carry out the attack. The bomber talked about his desire to be a martyr for Islam, and ended his remarks with a warning of more attacks against the people of Denmark whom he vowed would be wiped off

---

[1] According to international media reports, Al Sahab regularly releases videos of Usama Bin Laden as well as other al Qaeda leaders, including Ayman al Zawahiri (the number two in al Qaeda) and al Qaeda spokespersons.

4

the face of the earth.[2] A sophisticated computer-generated simulation of the June 2008 attack on the Danish embassy then followed, showing the white car being driven into the Danish embassy, followed by an explosion. Immediately following the video simulation is news film footage of the actual carnage in the aftermath of the bombing, as well as scenes of the Danish flag being burned.

Document 19, Case 09 CR 849.

None of the footage contained in the Denmark video depicts actual violence, and the footage of the aftermath of the bombing does not appear to show victims of the bombing. As a video clip of an interview of Westergaard is displayed during the video, the video quotes Westergaard as saying that he drew cartoons of the Prophet Mohammed at the direction of Flemming Rose, the cultural editor of the *Jyllands Posten* when the cartoons were published.

The video's call for revenge against Denmark and the newspaper for the publication of the cartoons, and its highlighting of Westergaard and Rose as the only two persons identified by name as responsible for the publication of the cartoons, bear directly on the charge that defendant knowingly assisted the conspiracy to carry out a terrorist attack on the *Jyllands Posten,* Westergaard, and Rose in retaliation for the publication of the cartoons. The video takes on even greater significance in light of the fact that it would make absolutely no sense for Headley to "dupe" defendant into opening an office of defendant's immigration business in Copenhagen, yet provide him with a video calling for terrorist attacks against the *Jyllands Posten* and the individuals involved in publication of the cartoons, specifically

---

[2] CBS News quoted the English translation as follows: "My final message to the worshippers of the cross in Denmark, I tell them this is not the last retaliation, and God permitting Sheikh Osama bin Laden will not forget about you. God willing, we will wipe you off the face of the earth."

5

naming Westergaard and Rose, and then exchange messages with defendant discussing his plans to visit and advertise in that same newspaper. Moreover, defendant corresponded with the *Jyllands Posten* newspaper masquerading as Headley. As noted in a separate filing, Headley asked defendant to obtain address and phone information for individuals associated with the *Jyllands Posten*, including Westergaard and Rose. This course of conduct makes it impossible to reconcile defendant's claim that he was a dupe with Headley's gift to him of a video calling for terrorist attacks on the *Jyllands Posten*.

### III. ARGUMENT

#### 1. The Video is Directly Relevant

"Direct evidence of a crime is almost always admissible against a defendant." *United States v. Gorman*, 613 F.3d 711, 717 (7th Cir. 2010). The video is directly relevant to the charges for at least three reasons. First, defendant's possession of the video directly corroborates Headley's testimony that he discussed the planned attacks in Denmark with defendant and provided defendant with a video on that topic in July 2009. The government expects defendant to vigorously challenge Headley's credibility, and the fact that agents recovered from defendant's residence the very video that Headley described giving defendant, the contents of which are consistent with Headley's description, corroborates Headley on a key point. If the video is excluded, jurors may be left with the inaccurate impression that agents never looked for or found the Denmark video.

Second, defendant's possession of the Denmark video directly corroborates Headley's testimony that he fully informed defendant of his efforts to target the *Jyllands Posten* and, in particular, Westergaard and Rose. Had Headley intended to "dupe" defendant into believing Headley merely was opening a branch of defendant's immigration business in Denmark and seeking to place an advertisement in the *Jyllands Posten*, it would have been nonsensical for Headley to have provided defendant with this video. This is both because the video laid plain Headley's motive to attack the *Jyllands Posten*, Westergaard, and Rose, and because it makes Headley's provision of the video to defendant makes it highly unlikely that Headley would have represented to defendant – other than in the context of a coded communication intended to conceal its meaning from third parties – that he intended to advertise for defendant's business in the *Jyllands Posten.* Similarly, it also would make no sense for Headley to make it clear to defendant that the newspaper was the target for a terrorist attack and then, while purportedly keeping defendant in the dark, seek defendant's assistance in obtaining the phone numbers and addresses of Westergaard, Rose, and others associated with the *Jyllands Posten,* or ask defendant to communicate with the newspaper on Headley's behalf.

Third, the Denmark video is relevant to the defendant's knowledge, intent, and motive, all of which are at issue in this case. The recovery from defendant's living room of a video praising a terrorist attack in retaliation for the publication of the cartoons and calling for further attacks against those responsible for publication of the cartoons bears directly on

7

whether defendant acted knowingly when he provided assistance to Headley as Headley prepared a terrorist attack against the very targets identified in the video – particularly in light of the fact that the video was recovered close in time to defendant's assistance to the plot. *See United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998) (video's probative nature outweighed potential for unfair prejudice because it depicted events similar to those charged and because it was evidence of the relationship between co-conspirators).

It is important to note that these arguments for the relevance of the video do not depend on definitive proof that defendant watched the video (although the government suggests that the location and condition in which the video was recovered, coupled with Headley's anticipated testimony that he described the video's contents to defendant, support an inference that defendant did watch the video). The mere fact that Headley gave defendant, and defendant possessed, a video of this nature while defendant was providing logistical assistance that aided Headley's planning of an attack in Denmark, is highly probative of defendant's knowledge.

    **2.**    **The Video is Not Unfairly Prejudicial**

Federal Rule of Evidence 403 provides that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. The touchstone of Rule 403 is that the prejudice must be "unfair;" "the mere fact that the evidence will damage the defendant's case is not enough." *United States v. Hammoud*, 381 F.3d 316, 341 (4th Cir.

2004), vacated on other grounds by 543 U.S. 1097 (2005), relevant portions reinstated by 405 F.3d 1034 (4th Cir. 2005). "That evidence may be highly prejudicial does not compel its exclusion; the evidence must be *unfairly* prejudicial." *United States v. Zahursky*, 580 F.3d 515, 525 (7th Cir. 2009) (affirming admissibility of evidence of the defendant's sexually explicit "chats" with minors because, although prejudicial, they were relevant to the crime charged, including the defendant's motive and intent).

In finding unfair prejudice, the court noted that individuals "often have materials in their personal libraries that do not reflect their personal beliefs." Order at 4. This is not the government's theory of relevance. Rather, as set forth above, the government seeks to offer the video because Headley will testify that he gave it to defendant and discussed its contents with him, and because it advocates precisely the criminal conduct whose planning he is charged with facilitating – terrorist attacks directed at the *Jyllands Posten* newspaper and persons associated with the publication of the cartoons of the Prophet Mohammed. Particularly in light of defendant's claim that he was duped into assisting Headley, there is nothing unfairly prejudicial about introducing the video. *See Hammoud*, 381 F.3d at 340-42 (4th Cir. 2004) (where defendant charged with material support of Hizballah, Hizballah video tape found in the defendant's home was highly probative of his knowledge of the organization and not unfairly prejudicial); *United States v. Stewart*, 590 F.3d 93, 132 (2d Cir. 2009) (affirming introduction of video tape depicting Osama Bin Laden and others encouraging violence because they were relevant and not unfairly prejudicial).

9

Moreover, to the extent the court is concerned about the potential for improper – as opposed to proper – prejudice from the admission of the video, a limiting instruction can direct the jury regarding the proper use of the video evidence. *See United States v. Moore*, – F.3d –, 2011 WL 1405221, *7 (7th Cir. April 14, 2011) (threat of unfair prejudice is appropriately tempered by a limiting instruction to the jury); *United States v. Strong*, 485 F.3d 985, 991 (7th Cir. 2007) (limiting instructions minimize the prejudicial effect of video tape evidence).

In a similar case, the Second Circuit upheld the introduction of materials similar to the Denmark Embassy video, finding that a limiting instruction sufficiently safeguarded against any risk of unfair prejudice. *United States v. Abu-Jihaad*, 3:07 CR 57, 2008 WL 282368 (D. Conn. Jan. 31, 2008), *aff'd*, 630 F.3d 102, 133 (2d Cir. 2010). In *Abu-Jihaad*, the district court permitted excerpts from three jihadi videos owned by the defendant to be played for the jury. 630 F.3d at 133. The district court found that the videos were direct evidence of the charges against the defendant that he provided military intelligence information to members of the organization from which he had purchased the videos. 2008 WL 282368 at *6. In addition, the Court charged the jury that the videos could be considered only in determining the defendant's knowledge and intent. *See* 630 F.3d at 134 n.30. The Second Circuit affirmed, finding that the pro-jihadist videos were "relevant to understanding [the defendant's] motive and intent," while the limiting instruction minimized

any potential prejudice caused by the content of the videos. *Id.* at 133-34; see also *Hammoud*, 381 F.3d at 340-42.

The government submits that the video at issue here – a video found in defendant's home praising and calling for violent retaliation against Denmark and the *Jyllands Posten* newspaper – is similarly relevant to the defendant's motive and intent in supporting a proposed attack on that newspaper.

3. **The Government Did Not Act in Bad Faith, and Any Prejudice to Defendant by the Delay in Producing a Transcript is Modest and Does Not Justify Excluding Highly Probative Evidence**

The court should not exclude evidence – and particularly significant evidence such as the Denmark video – where the government has not acted in bad faith and there is no discernable prejudice to defendant from the government's tardy production of the transcript. *See, e.g., United States v. Herrera*, 2010 WL 730150 (7th Cir. 2010) ("When considering a motion to exclude evidence, the court should take into account whether the government acted in bad faith and whether any unfair prejudice to the defendant can be cured by a less severe alternative"); *United States v. De La Rosa*, 196 F.3d 712, 717 (7th Cir. 1999) (exclusion of evidence is inappropriate where the government's violation did not result from its bad faith and a less drastic remedy such as a continuance will mitigate any unfair prejudice); *United States v. Flecha-Maldonado*, 373 F.3d 170 (1st Cir. 2004) (government's delay in producing translated tape transcripts did not require continuance or mistrial where defendant could not identify substantial claim of prejudice from the delay).

The video is in Urdu. The resources for Urdu translation in Chicago are limited; the Federal Bureau of Investigation has two Urdu language specialists, whose services have been in heavy demand in connection with multiple sensitive matters during the last two years. This case alone has required the verbatim translation of approximately 125 audio intercepts and 30 emails, in addition to more than 100 summaries of written products and recorded conversations, some of which were hours in length, some for court purposes and many more for investigative and intelligence purposes. The government prioritized the translation and transcription of recorded conversations, which involved direct participation by Headley and defendant, and produced to defense counsel translated transcripts of approximately 60 audio intercepts based on the court's deadline. Translating the video, for which no court deadline was set, was a lower priority, and although the formal request for the transcript was made in late 2010, the FBI linguist responsible for the case was unable to complete it until May 9, 2011, when it was immediately produced to defendant. The government recognizes that a transcript should have been produced sooner, but this is not a case in which the government delayed production of a transcript for strategic reasons or ignored its responsibility to obtain a transcript; rather, the government worked within the constraints of limited resources and competing demands for those resources. In addition, the government notes that it has already suffered a substantial sanction for delay in producing translations through the court's exclusion of the other video, the books, and the lecture tapes.

The government also submits that defendant cannot identify any unfair prejudice from the delay in producing the transcript. Defendant has known about the recovery, contents, and significance of the video since shortly after his arrest, was provided with a written summary of its contents and significance in November 2009, and received a copy of the video prior to his indictment; moreover, the video is in defendant's native language. The fact that the government has now produced a draft transcript of the video, and commits to having a final transcript, including times corresponding to the video, no later than May 13, 2011, will provide defendant approximately four weeks with the draft transcript, and at least three weeks with the final transcript, before the government will move to admit the video and transcript in evidence. The government believes this period will be sufficient to avoid any unfair prejudice to defendant, particularly in light of the fact that the video does not contain statements by defendant that will be scrutinized in detail at trial, but rather statements by third parties that are relevant, as set forth above, because Headley provided defendant with the video containing those statements, and defendant possessed the video containing those statements.

## IV. CONCLUSION

For the reasons stated above, the government respectfully requests that the Court reconsider its ruling excluding the Denmark video from admission at trial.

                                                        Respectfully submitted,

                                                        PATRICK J. FITZGERALD
                                                        United States Attorney

                              By:    /s/ Sarah Streicker
                                    SARAH STREICKER
                                    DANIEL COLLINS
                                    VICTORIA PETERS
                                    Assistant United States Attorneys
                                    219 South Dearborn Street, 5th Fl.
                                    Chicago, Illinois 60604