```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
                              EASTERN DIVISION

UNITED STATES OF AMERICA,      )     Docket No. 09 CR 830
                               )
              Plaintiff,       )     Chicago, Illinois
                               )     April 11, 2011
        v.                     )     1:30 o'clock p.m.
                               )
TAHAWWUR RANA,                 )
                               )
              Defendant.       )

                 TRANSCRIPT OF PROCEEDINGS - STATUS
              BEFORE THE HONORABLE HARRY D. LEINENWEBER

APPEARANCES:

For the Government:          HON. PATRICK J. FITZGERALD
                             United States Attorney, by
                             MR. DANIEL J. COLLINS
                             MS. VICTORIA JONES PETERS
                             Assistant United States Attorneys
                             219 South Dearborn Street
                             Chicago, Illinois 60604

For the Defendant:           BLEGEN & GARVEY
                             MR. PATRICK W. BLEGEN
                             MR. DANIEL A. RUFO
                             53 West Jackson Boulevard
                             Suite 1437
                             Chicago, Illinois  60604

                             SWIFT & McDONALD
                             MR. CHARLES D. SWIFT
                             109 7th Avenue
                             Suite 1108
                             Seattle, Washington  98101


Court Reporter:              GAYLE A. MCGUIGAN, CSR, RMR, CRR
                             Official Court Reporter
                             219 South Dearborn Street
                             Room 1022
                             Chicago, Illinois 60604
                             (312) 435-6047
```

1        (Proceedings had in open court:)
2             THE COURT:  Good afternoon.
3             THE CLERK:  09 CR 830, United States versus Rana.
4             MR. COLLINS:  Good afternoon, your Honor.  Dan Collins
5    for the United States.
6             MS. PETERS:  Vickie Peters for the United States.
7             MR. BLEGEN:  Good afternoon, Judge.  Patrick Blegen,
8    Charlie Swift, and Dan Rufo for Mr. Rana, who is I think out
9    back --
10            THE COURT:  Coming out?
11            MR. BLEGEN:  Yes.
12       (Defendant enters courtroom.)
13            THE COURT:  Good morning -- afternoon.
14            All right, this is a status.
15            Do you want to tell me what's on your mind?
16            I have a few things I want to go over.
17            MR. COLLINS:  Judge, I think I'll let Mr. Blegen start.
18            THE COURT:  All right.
19            MR. BLEGEN:  That's fine, Judge.
20            First of all, I think you probably already heard that
21   we cancelled the CIPA closed hearing, and the reason for that
22   was we believe we've reached agreements with regard to the
23   classified issues that we have.
24            The only thing I would say is we believe we have, but
25   we haven't gotten a final answer from where they need to come

1   from -- I presume Washington -- but it looks like that's where
2   it's headed.
3           I would suggest we either -- so -- we could hear within
4   a day or week that we don't have agreements.  So I would -- we
5   can either set aside a date or we could call and let your clerk
6   know if we need to have such a hearing --
7           THE COURT:  What's the government's position on that?
8           MR. COLLINS:  I think we should just do that, Judge, is
9   to actually set another status date maybe toward the end of the
10  month.
11          THE COURT:  All right.
12          MR. COLLINS:  I think we'll continue to work things out
13  the way we've been doing.
14          THE COURT:  Okay.
15          THE CLERK:  We can try for Monday, April 25, in the
16  afternoon.
17          MR. BLEGEN:  That's perfect for us, Judge --
18          THE COURT:  All right.
19          MR. BLEGEN:  -- because Mr. Swift is already going to
20  be in town that week.
21          What time did you say, Wanda?
22          THE CLERK:  1:30.  At 1:30.
23          THE COURT:  Okay.  And you have -- if it's unnecessary,
24  the government gets the okay, then you can just cancel that,
25  correct?

1        MR. COLLINS:  Yes, Judge, or at the very least we'll
2   let everyone know that it's not going to involve any classified
3   issues.
4        THE COURT:  All right.
5        MR. COLLINS:  And if the parties still want a status,
6   we can proceed with a status that date the way that we're doing
7   today.
8        THE COURT:  All right.  Anything else, Mr. Blegen?
9        MR. BLEGEN:  Yes.  There's several issues.  If you
10  want, I can just go through them.  I've got a list.
11       THE COURT:  Yeah.
12       MR. BLEGEN:  There's I think a fully-briefed
13  outstanding motion to bifurcate sentencing proceedings.
14       THE COURT:  All right.  Do you want -- I have a ruling
15  for that.
16       MR. BLEGEN:  We can take that.  That's fine, Judge.
17       THE COURT:  Do you want to do that next?
18       MR. BLEGEN:  Sure.
19       THE COURT:  All right.  Defendant Rana moves to
20  bifurcate the trial set to start on May 16 so that the jury
21  considers enhanced sentencing allegations after it reaches a
22  verdict on the underlying material support charges.  Count 9 of
23  the superseding indictment, for providing material support to
24  the November 2008 terrorist attacks in Mumbai, India, carries a
25  maximum sentence of 15 years imprisonment.  Count 12, for

providing material support to the Lashkar terrorist organization, also carries a maximum 15-year sentence. The maximum sentence for both counts, however, increases to life imprisonment if defendant's actions resulted in the death of any person. The superceding indictment alleges that approximately 164 people died in the Mumbai attacks.

Because defendant has failed to show actual prejudice from the joinder of the sentencing allegations and for judicial efficiency, the Court exercises its discretion and denies defendant's motion. See *Alviar* 573 F.3d at 545. Joinder of underlying charges and enhanced sentencing factors is common in criminal trials. Of course, the jury must find beyond a reasonable doubt that defendant provided material support to terrorists and that this support was part of the conspiracy that led to the Mumbai deaths for the enhanced sentences to apply. See *Apprendi*, 530 U.S. 490. But in this case, the deaths appear inextricably linked with the underlying material support allegations. As such, combining these allegations will not violate defendant's due process rights. The deaths would be presented to the jury with the material support allegations, as this is relevant and admissible evidence for these charges. Defendant would not have to make inconsistent arguments to support his case. In asserting his innocence of the material support charges, he will also assert his innocence in playing a role in the Mumbai deaths. The Court finds that the causation

1   issue on the deaths is not severable from the underlying
2   material support charges.  Also, because defendant has not
3   demonstrated actual prejudice, the bifurcation would
4   unnecessarily and unreasonably extend what has the potential to
5   be a lengthy trial.  Accordingly, defendant's motion is denied.
6               MR. BLEGEN:  Judge, the next issue on my list is the
7   government has asked for an extension of time to file their
8   Santiago proffer; and then depending on your ruling on their
9   motion for an extension of time, I think I -- we would ask to
10  move the motion in limine date, which we had kind of tied to --
11              THE COURT:  Are you objecting to their motion?
12              MR. BLEGEN:  Well, I told them I was -- I was, only
13  because I thought it would be silly for me to demand it early
14  and then say okay to get it later than I had requested, but I'm
15  presuming you're not going to dismiss the case or anything
16  so ...
17              THE COURT:  That's probably accurate.
18              MR. COLLINS:  We're filing it today, Judge.
19              THE COURT:  All right.  So the defendant objects to the
20  10-day extension for the Santiago proffer.
21              The Court overrules the objection and grants the
22  Government's motion for the additional 10 days.
23              Now, is there anything the defense needs in light of
24  that?
25              MR. BLEGEN:  Judge, we wanted to move the motion --

1    motions in limine are currently due then Friday of this week,
2    the 15th, so we would ask that they be due -- if we're going to
3    get it today, can we file those on April 22nd?
4            MR. COLLINS:  I think we had maybe talked about an
5    April 25th date, that following Monday.
6            MR. BLEGEN:  That's fine, too.
7            THE COURT:  That's fine then.
8            MR. BLEGEN:  And then responses?
9            THE COURT:  Responses will be the same time element, I
10   would assume.
11           MR. BLEGEN:  Can we --
12           MS. PETERS:  Was it a week?
13           MR. BLEGEN:  I think it was longer than a week, but in
14   light of --
15           THE COURT:  I think a week is sufficient.
16           MR. BLEGEN:  That's fine.
17           THE CLERK:  May 2nd.
18           THE COURT:  So that will give me time to rule on prior
19   to trial so you know.  I'll endeavor to rule a week prior to
20   trial, so it's important that you have them in on the 2nd then,
21   so I'll try to rule -- what's another week?
22           THE CLERK:  What is that, the 9th?  The trial is the
23   16th.
24           THE COURT:  Yeah, so I'll endeavor to rule on the 9th.
25           MR. BLEGEN:  Judge, and then next on my list is there's

```
 1    still --
 2            THE CLERK:  Excuse -- I'm sorry.  The 25th date that I
 3    gave you, it would have to be the 26th, a Tuesday, at 1:30.
 4            THE COURT:  All right.
 5            THE CLERK:  Is that okay?
 6            MR. BLEGEN:  For the status?
 7            MS. PETERS:  For the status?
 8            THE CLERK:  For the next status.
 9            THE COURT:  Yeah.
10            THE CLERK:  26th at 1:30.
11            MR. BLEGEN:  Yes.
12            THE COURT:  Okay.
13            THE CLERK:  All right.
14            MR. BLEGEN:  Judge, we have an outstanding motion to
15    quash arrest and suppress evidence.  I think the government
16    wants to address that.
17            MR. COLLINS:  Judge, I had asked for an extension
18    previously.  Unfortunately, I need a little bit more time to
19    finish that up.  If I can have till April 22nd to file responses
20    to the defense motion to suppress as well as the defense motion
21    to quash.
22            MR. BLEGEN:  I'm going to object for the record, Judge,
23    and ask to reply --
24            THE COURT:  All right.  I'll grant that request.  Do
25    you want a reply date?
```

1        MR. BLEGEN:  One week is fine.
2        THE COURT:  One week.
3        THE CLERK:  April 29th.
4        THE COURT:  All right.  We'll rule by mail on those.
5        Anything else, Mr. --
6        MR. BLEGEN:  Yes.  We had filed a motion to divide the
7    cross-examination of Mr. Headley between me and Mr. Swift, and I
8    think the government has at least told me that they don't have
9    an objection to that.
10       THE COURT:  I don't have any objection either unless
11   you unduly prolong the cross.
12       MR. BLEGEN:  I think it's going to be pretty long in
13   and of itself --
14       THE COURT:  It will be long, but as long as you don't
15   unduly rehash matters already covered.
16       MR. BLEGEN:  Correct.  That's -- we're going to make
17   every effort not to duplicate or cover the same grounds.
18       THE COURT:  All right.  Are you going to -- different
19   subjects, is that the way you're going to divide it?
20       MR. BLEGEN:  That's how we plan to break it up, yes.
21       THE COURT:  All right.
22       MR. BLEGEN:  Judge, I don't think that the government
23   has any experts, at least not currently.  We may.  And we would
24   like to just set a date for expert disclosure, if it's okay with
25   the government.  Our expert -- our primary expert is going to be

1    in town April 25th, so if we could have until May 2nd to file
2    expert disclosures.  Hopefully that will be enough time.  He
3    wouldn't be testifying obviously until after the Government's
4    case anyway.
5            MR. COLLINS:  That's fine, Judge.
6            THE COURT:  All right.  Expert disclosures on both
7    sides.  Does the government -- is the government not going to
8    have experts?  Have you made a decision?
9            MR. COLLINS:  At this time, it's unlikely that we will,
10   Judge, but we're still considering it.
11           THE COURT:  What -- can you give me a subject of what
12   you're thinking about?  Or is that --
13           MR. SWIFT:  Yes, your Honor.  Potentially experts in
14   two fields:  one in computer forensics, depending; the other --
15   that would be a very short expert.  The other expert would be in
16   the field of terrorism, and specifically terrorism recruitment
17   tactics and terrorism ideology.
18           THE COURT:  Okay.  I can anticipate what I think the
19   government will do, but we'll wait and see.
20           MR. SWIFT:  It would be unusual because the government
21   generally calls such an expert in almost every one of their
22   cases that I've been involved in, but I think it's important
23   information.
24           THE COURT:  All right.  Well, that's fine.  We'll take
25   that -- what was the date again for the experts?

1                MR. COLLINS:  May 2nd, your Honor.
2                THE COURT:  May 2nd.  For both sides.
3                MR. BLEGEN:  Yes.
4                THE COURT:  Mr. Blegen?
5                MR. BLEGEN:  Judge, we had asked for a witness list.
6                THE COURT:  Yeah, the witness lists.
7                MR. BLEGEN:  And it appears as though the government
8    agrees that we exchange witness lists without filing them
9    publicly for I think safety reasons.
10               THE COURT:  Fine.
11               MR. BLEGEN:  Which is fine with us.  And we had talked
12   about a date --
13               THE COURT:  All right.  So that motion is withdrawn as
14   moot at this point without prejudice to raise it again?
15               MR. BLEGEN:  Yes.  Judge, the only issue -- I don't
16   know that it's necessary to comment on it, now that the motion
17   is moot but -- I don't think the government did this
18   intentionally, but their motion or response indicates that one
19   of the reasons you shouldn't grant it is we've already got all
20   of the Jencks Act material and all of the discovery.  We don't
21   have all of the Jencks Act --
22               THE COURT:  I personally have a view that -- and I
23   understand that -- what the law is, but to make the trial run
24   smoother, it's helpful not to -- for the government to give the
25   defendant a list of every possible witness, but rather those

1  witnesses which they have a good reason that they will probably
2  intend to call so that the defendant doesn't have to spend a lot
3  of time, you know, with a telephone directory, so to speak.
4              MR. COLLINS:  Understood, Judge.
5              MR. BLEGEN:  And, Judge, that's what we would do as
6  well.
7              THE COURT:  Yeah.
8              MR. BLEGEN:  I think also the parties might need to
9  come up with a list of names that might be mentioned, which
10 would be a bigger list, for you to read to the jury at some
11 point; but that wouldn't be --
12             THE COURT:  Yeah, you should probably work together on
13 that.
14             MR. BLEGEN:  Right, that wouldn't necessarily be
15 witnesses.
16             THE COURT:  Right, names that come up.  But, again, we
17 don't want to read them the telephone directory, so the
18 witnesses whose names would appear to be -- have a substantial
19 role in the case.
20             MR. BLEGEN:  Right, plus the Pakistan telephone
21 directory is very --
22             THE COURT:  Right.  Probably that the jury pool will
23 not be acquainted with very many Pakistani people who would be
24 mentioned in the trial.
25             MR. BLEGEN:  I think that's right, Judge.

1            And then one last issue I wanted to address, and not
2   trying to reargue it, but your Honor had ruled on a motion to
3   quash a certain subpoena that was put on the State Department.
4   The ruling is dated April 1st of 2007.
5            THE COURT:  Okay.
6            MR. BLEGEN:  In a nutshell, it was our -- we had filed
7   a motion -- excuse me, we had submitted a subpoena.  The
8   government moved to quash the subpoena.  And -- so you've
9   already ruled on the issue.  But what had concerned me, and I
10  want to make sure we're on the same page as the government and
11  the Court, is that one of the reasons the subpoena was quashed
12  is that the Court's ruling said that if the government possesses
13  or has knowledge of Brady material in the cables subject to the
14  subpoenas -- we had subpoenaed cables from the Department of
15  State -- it already has an obligation to tender it to the
16  defendant.  The subpoenas, therefore, are redundant and are
17  unnecessary to obtain impeachment material as they merely seek
18  cumulative information.
19           That position from the Court is fine with us.  I mean,
20  we object to the overruling or quashing of our subpoenas.  But
21  the Court had previously said in its favorable evidence motion
22  that the government was not required to conduct a broad search
23  or the broad search of seemingly every federal agency and
24  department that defendant requests as the knowledge of one
25  agency of exculpatory or impeaching material unknown to the

1    prosecution would not be imputative on the prosecution.  So --
2         THE COURT:  Well, there is a limit.  I mean, it's
3    not -- they don't have to produce everything -- make a search
4    for everything.  They have to make a reasonable search, under
5    all the circumstances, which is all they would have to do, if I
6    ordered them to produce, they don't have to produce every
7    possible thing, no matter how close to irrelevant it would be.
8         MR. BLEGEN:  I understand.
9         THE COURT:  You don't want -- you don't want bushels of
10   stuff that you have to go through.  They have to make some --
11   and all that was intended to imply, and I assume the government
12   read it that way, that they have to make a reasonable --
13   exercise due diligence and make a very -- a reasonable
14   investigation to determine Brady material.
15        MR. BLEGEN:  Correct.  And if they did that with the
16   Department of State, then I -- then that's fine, we don't have a
17   complaint.
18        I'm just not sure they did because they moved to quash
19   the subpoena, and I don't know that anybody looked to see if
20   there's any Brady or Giglio material in the possession of the
21   Department of State --
22        THE COURT:  Well, I guess you can ask them, did you --
23        MR. COLLINS:  Well, Judge, in terms of -- in terms of
24   what agencies the government has visited in order to conduct its
25   discovery review, I'm not sure that's something that we're going

1   to be putting on the public record.
2              I can address Mr. Blegen's concern --
3              THE COURT: Why don't you do that?
4              MR. COLLINS: -- in a conversation outside these --
5              THE COURT: Fine. Why don't you do that?
6              MR. COLLINS: -- proceedings and I think he'll be
7   satisfied.
8              THE COURT: All right.
9              MR. BLEGEN: That's fine, Judge.
10             THE COURT: Anything else, Mr. Blegen?
11             MR. BLEGEN: Judge, I don't think so. We got the
12  government's final transcripts, as you ordered.
13             And the only other issue I had to talk about was jury
14  instructions, but those dates are upcoming still.
15             THE COURT: Does the government have anything? I have
16  one matter I want to raise but at the end.
17             MR. COLLINS: Judge, the one thing that I was going to
18  ask is the last time we were here, we had had an issue about the
19  entirety of Headley's e-mails, and the government had asked for
20  some time to consult with folks that were going to talk about
21  the classified issues and make a filing to your Honor.
22             We were going to ask until the 18th of April in order
23  to make that filing, just to put that date on the record.
24             THE COURT: All right.
25             MR. COLLINS: Your Honor, that's it from the

1    government.

2         THE COURT: All right. Now, on the jury panel, we've
3    sent out I think 500 requests. Our goal is to receive 100
4    people who are willing to serve, which means I'm going -- I get
5    a substantial number of people who request to be excused. I
6    have a stack about this high. (Indicating.)

7         Do either side or both sides wish to review -- what
8    I've been -- always been instructed to do in cases like this, I
9    just write on the top of the response from the juror "okay" or
10   "denied."

11        Does either side or both sides want to review, after
12   I've done that -- now, what you're going to find out is these
13   people, they say, you know, I was laid off and I just went back
14   to work and I really can't afford a month off, so on, or I'm ill
15   or I'm -- I happen to notice one on there that we have
16   non-refundable tickets to somewhere, so on and so forth.

17        Do you want to review those or --

18        MR. COLLINS: The government does not, Judge.

19        THE COURT: They will be available in my chambers for
20   review if you wish to review. Just let me know if you do.

21        MR. BLEGEN: That's fine, Judge. We'll let you know if
22   we want to review them. Probably not.

23        MR. SWIFT: Probably not.

24        THE COURT: Okay. Because it's -- a lot of it is what
25   you might expect. Probably there's a few people who lie and

1    cheat and so forth.  You probably don't want them anyway.
2             MR. BLEGEN:  Right.
3             THE COURT:  All right.  Let me know -- Wanda, when are
4    they supposed to be in, total?
5             THE CLERK:  I told them -- well --
6             THE COURT:  They don't always --
7             THE CLERK:  I'm not quite sure exactly.
8             THE COURT:  They come in -- they come in in a rush and
9    then they -- and then there's --
10            THE CLERK:  But I've got to get these back down as soon
11   as possible so that if he does not excuse them, then they know
12   that they have to come.
13            THE COURT:  My practice is to bend over to excuse
14   rather than not excuse because, you know, if they go to all the
15   trouble of explaining why they want to be excused, they're
16   probably not going to be very happy to find out that they have
17   to sit for a month.  And jurors who don't want to be here don't
18   usually amount to be good jurors.
19            But -- so as far as -- they'll keep coming in; but if
20   you want to see the initial batch, let us know within the next
21   few days.
22            MR. BLEGEN:  Judge, we'll let you know by the end of
23   today.
24            THE COURT:  Fine.  Very good.
25            And the government, as I understand, does not want to

```
 1   review the --
 2           MR. COLLINS:  No, your Honor.
 3           THE COURT:  Anything else?
 4           MR. COLLINS:  Nothing from the government.
 5           THE COURT:  If not, then we'll see you on April --
 6           THE CLERK:  26th.  April 26th at 1:30.
 7           MR. COLLINS:  Thank you, your Honor.
 8           MS. PETERS:  Thank you.
 9           THE COURT:  Thank you.
10       (Proceedings Concluded.)
```

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

s/_____    _____
   GAYLE A. McGUIGAN, CSR, RMR, CRR    April 15, 2011
   Official Court Reporter